Nancy **PARHAM** et al., Appellants,

v.

**GLASS CLUB LAKE, INC.,** Appellee.

No. 8323.

Court of Civil Appeals of Texas,
Texarkana.

Jan. 20, 1976.

Rehearing Denied Feb. 17, 1976.

See also, Tex.Civ.App., 485 S.W.2d 796.

J. R. Cornelius, Cornelius Law Firm, Jefferson, Old & Moye, Mt. Pleasant, for appellants.

Leslie R. Echols, Cornett, Echols & Biard, Paris, for appellee.

CHADICK, Chief Justice.

## I.

This case was instituted in the trial court as a declaratory judgment action authorized by Tex.Rev.Civ.Stat.Ann. art. 2524–1. A summary judgment was entered and appellants Mrs. Nancy Parham, Mrs. May Benefield and Joe Marvin Parham, Jr., the defendants below, have perfected an appeal. The judgment is affirmed.

## II.

The appellants are successors in title to L. E. Parham and wife, Ruby Parham, who, on August 6, 1921, entered into a written land lease with trustees for appellee herein, Glass Club Lake, Inc., the plaintiff below. The lease embraces 155 acres of land, provides for a yearly rental of $500.00 and runs for a primary term of 50 years. Following the language of the lease covenant governing rental payment is this sentence: "Lessee to have the right and option at the end of this lease to renew this lease for another fifty years upon like terms and conditions of this lease." Before expiration of the lease, Glass Club Lake, Inc., notified the appellants that it was exercising the option to renew the lease for an additional 50 year term. Glass Club Lake, Inc.'s trial plead-ings alleged that appellants refused to recognize the validity of the renewal covenant and prayed for judgment declaring the option valid and binding. Both the plaintiff and defendants moved for summary judgment in the trial court and plaintiff's motion was sustained.

## III.

Appellants insist that the option was not supported by an independent consideration, and, alternately that exercise of the option constituted a qualified acceptance of the terms and conditions of the original lease, as Glass Club Lake, Inc. intended during the renewal period to continue violations of the lease that prevailed during the primary term. The lease appears to be an integrated agreement, that is to say, there is nothing in the record or the written lease to suggest that the parties intended to contract separately for (1) demise of the land for the primary term of 50 years and (2) the option to renew; or that consideration was for the demise of the land alone and not for the option or other covenants therein. The general rule is that an option to renew, incorporated in a lease, is supported by the consideration for the lease. *Bridgeman v. Jefferson Amusement Co.*, 207 S.W.2d 138 (Tex.Civ.App. Beaumont 1947, writ ref'd n. r. e.); *Hereford v. Tilson*, 198 S.W.2d 275 (Tex.Civ.App. Amarillo 1946, no writ); 50 Am.Jur.2d, Landlord and Tenant, Sec. 1157; 51C C.J.S. Landlord & Tenant § 56(4), p. 175. The lease in this instance comes within the general rule, that is to say, Glass Club Lake's covenant to pay rentals constituted consideration for both demise of the land and the option to renew. The option is supported by a valid consideration and is a viable part of the lease agreement unless rendered inoperative for other reasons.

The contention that Glass Club Lake, Inc. did not opt to accept a renewal of the lease according to the original terms and conditions assumes violation of its terms and conditions during the primary term. Viola-

tions or not, and the consequence of violations, will be discussed next.

## IV.

The general purpose to which the land demised by the lease agreement was to be devoted is recited in the agreement, as follows, "building and maintaining a Club Lake for fishing, hunting, bathing, boating, and other lawful sports." The club's specific use of the demised land is regulated by these covenants in the instrument, to-wit:

"Said club lake to be builded and constructed on said land as now planned by the Engineer who has made the survey, and lessee to have the right to all covered by said lake, and to a space for fifty feet (50) on the outside of the water around said lake, and also a road or passage over other land of lessor to said lake, said passage to be selected by lessors, but to be reasonably convenient for lesses (sic) to use.

"It is agreed that the pasutre (sic) surrounding said lake small (sic) remain an pasture, and the lake unfenced, but should lessors, at any time, abandon the pasture land and use said land for other purposes than pasture, then lessees shall have the right to fence said lake, and the fifty feet of land around same, in order to protect the lake.

"It is also agreed that the lessee are to have suitable land adjoining the lake and the right of way around the same for the purposes of building Club-Houses, and buildings for use of the club, and they shall also have the right to build bath houses, boat-houses and other improvements, of like character on the land adjoining the lake.

"It is further agreed, that in addition to the above rights, lessee shall have the right to lay off a suitable ball ground in said pasture, and construct thereon suitable grand-stand for the purpose of baseball and other games, golf-links and things of that nature that might be used by the club during the term of this lease."

\*     \*     \*     \*     \*     \*

The summary judgment evidence showed, and Glass Club Lake admits, that sixty-seven houses built by club members occupy land located more than 50 feet from the lake water's edge; that eleven or twelve houses are fenced and that one-tenth of the lake shore line is thereby fenced off the surrounding open pasture. No club house for common use of the members has ever been erected but a bath house for common use and six or seven boat houses for individual use have been built. Three of the houses located on the leased premises are used as homes by members; one member keeps "some kind" of livestock or chickens at his house and probably two of the sixty-seven houses are in disrepair. Only members and their guests are permitted to use lake houses. The club requires member's houses to be not less than 400 square feet in size and to otherwise comply with standards set by a building committee. With respect to land use, buildings and occupancy, the leased premises have been used in the same manner as currently used since shortly after the lease agreement was made.

Doubt as to the meaning of the language of the lease is to be resolved most strongly against the lessor. In this instance, vague and imprecise language must be given an interpretation as favorable to Glass Club Lake, Inc., as the lease instrument permits when all provisions are considered. *Red Oak Fishing Club v. Harcrow,* 460 S.W.2d 151 (Tex.Civ.App. Waco 1970, no writ); *Sirtex Oil Industries, Inc. v. Erigan,* 403 S.W.2d 784 (Tex.1966). The lease agreement does not expressly prohibit a member of the club from building a lake house and individually occupying and using it. The use of club land and facilities by a member with the club's consent and in the mode it directs is a use by the club. Permitting members to erect lake houses and regulation thereof may be construed as an implementation of the lease provision that club houses (plural) and buildings (plural) may

be erected for use of the club. The lease vests an unrestricted right in the club to use a strip of land fifty feet wide "on the outside of the water" together with a convenient passageway to the lake over lands belonging to the lessor. In a separate paragraph it is agreed that the club is to "have suitable land adjoining the lake and the right of way around the same for the purposes of building Club-Houses, and buildings for use of the club." These provisions are reasonably construable as agreement that land embraced in the lease but lying outside or more than fifty feet from the water's edge may be used as the location of houses for the use of the club. The lease is silent on permanent occupancy of buildings as homes and on keeping livestock or chickens at authorized buildings. The facts, when lease provisions are construed most favorably to the club, show no violation of the lease, except to the extent that fencing a house and its grounds had the result of fencing the lake. The record evidences no right in the club to fence the lake or a part of it. This violation will be further considered.

### V.

■■■ The rental payment covenant of the lease provides that on failure of the club to pay according to the lease's terms the lessor "shall have the right to declare this lease forfeited, and all rights under shall at once revert back to lessors." Summary judgment proof shows payment of all rentals. The right to forfeit the lease is not expressly nor impliedly allowed by the lease for violations or nonperformance of covenants other than for payment of rent. Forfeitures generally are not favored. See 25 Tex.Jur.2d, Forfeitures, Secs. 3 and 11. Exercise of the option to renew is not conditioned upon performance of or compliance with all or any of the lease's covenants. A breach of the fencing agreement does not release the lessors from the obligation to renew. *Ewing v. Miles,* 12 Tex.Civ.App. 19, 33 S.W. 235 (1895, writ ref'd); 50 Am. Jur.2d, Landlord and Tenant, Sec. 1178;

51C C.J.S. Landlord & Tenant, § 62(1)b. See also *Bertrand v. Pate,* 284 S.W.2d 802 (Tex.Civ.App. Eastland 1955, no writ); *Shepherd v. Sorrells,* 182 S.W.2d 1009 (Tex. Civ.App. Eastland 1944, no writ). The club's liability to respond in damages for breach of its contract was not an issue in the trial court.

### VI.

The appellants' points of error presenting other issues have been examined. Waiver of nonperformance or violations of the lease are not shown as a matter of law, but as heretofore explained affirmance is grounded upon a contractual right to renew. No error requiring reversal is found. All of appellants' points of error are overruled. The judgment of the trial court is affirmed.

CORNELIUS, J., not participating.