**MINER–DEDERICK CONSTRUCTION CORPORATION, Petitioner,**

v.

**MID–COUNTY RENTAL SERVICE, INC. et al., Respondents.**

No. B–8466.

Supreme Court of Texas.

July 2, 1980.

Rehearing Denied July 30, 1980.

Mehaffy, Weber, Keith & Gonsoulin, Robert Q. Keith and Patricia Chamblin, Beaumont, for petitioner.

John L. Fulbright, Beaumont, for respondents.

McGEE, Justice.

This suit was initiated by a subcontractor against a general contractor for amounts owed in connection with three subcontracts. The general contractor counterclaimed for damages for breach of the subcontracts. The trial court rendered a judgment in favor of the general contractor, but the court of civil appeals reversed and awarded damages to the subcontractor. 583 S.W.2d 428. We reverse the judgment of the court of civil appeals and remand the cause to that court.

Miner-Dederick Construction Corporation was the general contractor for the construction of a library building for Lamar University in Beaumont, Texas. Because the contract was for public works, statutory general contractors' bonds were required to be given by Miner-Dederick. *See* Tex.Rev.Civ. Stat.Ann. art. 5160 (Vernon 1971 & Supp. 1979). Miner-Dederick entered into three subcontracts with Mid-County Rental Services, Inc., and Alton M. Stewart, a joint venture (Mid-County). The terms of each subcontract were similar; they differed with respect to the contract amount and the nature of the work to be performed. Contract 1 was for $94,948 for excavation and backfill, Contract 2 was for $57,402 for site cleaning and a parking lot, and Contract 3 was for $30,000 for street paving. In connection with each subcontract, Miner-Dederick required subcontractors' bonds to be given by Mid-County with United States Fidelity & Guaranty (USFG) as surety.

In 1973, Mid-County began work under the subcontracts, but Miner-Dederick became displeased with the performance. In 1975, Miner-Dederick sent notice of termination. Mid-County brought suit against Miner-Dederick alleging that it had performed the work under the subcontracts and claiming the balance due on the contract prices. In addition, Mid-County alleged that it had performed "extra work" at Miner-Dederick's request. It claimed the value of this extra work and attorney's fees.

Miner-Dederick counterclaimed, alleging that Mid-County had not completed the contracts and seeking costs of completion damages. According to Miner-Dederick, its costs of completion offset any recovery to which Mid-County might be entitled and required an award in Miner-Dederick's favor. Miner-Dederick also sought recovery for amounts it had paid or was obligated to pay to Mid-County's suppliers.

Special issues were submitted to a jury. The jury found that Mid-County had breached the subcontracts, causing damage to Miner-Dederick. With respect to the opposing damages claims, however, damages were determined to be "NONE" for each contract. In another issue, the jury found that Mid-County was entitled to $2790.64 for extra work and attorney's fees. The jury also found that Miner-Dederick had paid or was obligated to pay $10,000 to Mid-County's suppliers. The trial court rendered judgment on this verdict, awarding Miner-Dederick $7203.36 against Mid-County and USFG.[1]

Mid-County appealed. The court of civil appeals held that Miner-Dederick was not entitled to recover the $10,000 for suppliers' claims. It also held that in addition to the jury's award of $2790.64, Mid-County was entitled to two more items of damages that had been admitted by Miner-Dederick: $19,936.45 as the balance due under Contract 3 and $4141.23 for extra work done in connection with Contract 1. We granted Miner-Dederick's application for writ of error to consider 1) whether Miner-Dederick is required to pay the additional damages awarded by the court of civil appeals, and 2) whether Miner-Dederick is entitled to $10,000 representing suppliers' claims.

1. This amount was apparently intended to be the difference between Miner-Dederick's $10,-000 award for suppliers' claims and Mid-County's $2790.64 award for extra work and attorney's fees.

### APPLICATION OF MINER–DEDERICK

*Jurisdictional Predicate*

■ Subsequent to the court of civil appeals' decision, both Miner-Dederick and Mid-County filed motions for rehearing. Mid-County urged that it was entitled to interest on its damages. The court modified its judgment by awarding prejudgment interest. Mid-County now argues that under the rule stated in *Oil Field Haulers Association v. Railroad Commission*, Miner-Dederick's first motion became "functus officio" and its second motion is insufficient to preserve the points of error presented in its application to this court. *See Oil Field Haulers Association v. Railroad Commission*, 381 S.W.2d 183, 189–90 (Tex.1964). That case is not controlling here. In the *Oil Field Haulers* case the second motion for rehearing contained the statement that "[a]ppellees hereby incorporate and reurge each of their Points of Error previously urged." In this case Miner-Dederick's second motion for rehearing met the requirement that the assignments of error be "distinctly specified." *See* Tex.R.Civ.P. 458.

*Interpretation of the Jury Findings*

■ Under Mid-County's theory of damages, payments made by Miner-Dederick were subtracted from the contract prices. The contract prices and the amount of payments were not disputed at trial and were broken down by contract on Miner-Dederick's exhibits. Under the theory of damages used by Miner-Dederick, its liability to Mid-County for the contract prices was offset against payments and costs of completion. In connection with Contract 1, Miner-Dederick admitted that it owed $4141.23 to Mid-County for unpaid, "approved" extra work. In connection with Contract 3, Miner-Dederick acknowledged that it owed $19,936.45. Toward the end of the trial, a chart displaying Miner-Dederick's claims and liabilities was introduced as a summary of other documents in evidence. A portion of this chart appeared substantially as follows:

| | Contract 1 | Contract 2 | Contract 3 |
|---|---|---|---|
| Total Cost to Miner-Dederick | $117,143.22 | $ 92,778.71 | $ 10,063.55 |
| Less: Contract Amounts | 101,505.23 [2] | 57,402.00 | 30,000.00 |
| TOTAL | $ 15,637.99 | $ 35,376.71 | [$ 19,936.45] |

Damage issues were submitted and answered in the following form:

#### SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that Miner-Dederick Construction Company was damaged because of the breach of contract, if any, inquired about in Special Issue No. 6.

Answer "We do" or "We do not" regarding each contract:

| | Answer |
|---|---|
| Contract No. 1 | We do |
| Contract No. 2 | We do |
| Contract No. 3 | We do |

If you have answered the foregoing Special Issue No. 8 "We do," and only in that event, then answer the following:

---

2. This figure includes "approved" extras in the amount of $6557.23, the sum of $4141.23 for unpaid extras and $2416 for paid extras.

SPECIAL ISSUE NO. 9

Find from a preponderance of the evidence the difference in money, if any, between the contract price and the fair and reasonable sum of money (including the money paid to Mid-County Rental Service, Inc.) required by an ordinary prudent contractor, situated as was Miner-Dederick Construction Company, to complete the contracts under the same or similar circumstances.

ANSWER in dollars and cents, if any.

| | |
|---|---|
| Contract No. 1 | $ <u>NONE</u> |
| Contract No. 2 | $ <u>NONE</u> |
| Contract No. 3 | $ <u>NONE</u> |

---

Miner-Dederick's first contention is that the trial court's judgment on the verdict, which awarded no damages for Contracts 1, 2, or 3 to either party, was a correct interpretation of these jury findings. According to Miner-Dederick, the jury treated the contracts as one and offset all of Miner-Dederick's liabilities against Mid-County's liabilities. Miner-Dederick concludes that the jury intended a "washout" for the contracts, finding that the total costs of completion exactly equalled the total balance due for the contract prices. Miner-Dederick argues that this case is controlled by *Davis v. Campbell*, 572 S.W.2d 660 (Tex. 1978). In *Davis v. Campbell*, Davis sued for lost profits for breach of contract. He acknowledged owing certain rents to Campbell and credited them when computing his damages. Campbell pleaded the rents as an offset. The jury was shown a chart, which listed the opposing claims and a net balance. The jury's damage award was close to that net balance. This court held that the jury's award included the offset for rents: "Although the mental processes of the jury are unknown, the constraints of the theory upon which the case was tried by the parties required the jury to offset the rent arrearages in favor of Campbell in determining Davis' profit." Thus, Campbell was not entitled to a second offset. *Id.* at 662.

We are unable to accept the interpretation urged by Miner-Dederick because its necessary implication is that the jury did not answer the issues in harmony with the manner in which they were submitted. We cannot agree that the jury treated the three subcontracts as one contract. It is true, as pointed out by Miner-Dederick, that its pleadings treated the contracts as one, by claiming an aggregate total under all contracts as well as separate amounts for each contract. Similarly, an aggregate total as well as separate amounts was shown on exhibits. Nevertheless, the "constraints of the theory upon which the case was tried" did not direct the jury to calculate its findings in the manner urged by Miner-Dederick. Despite Miner-Dederick's contention that the contracts were treated as one, Miner-Dederick's own conduct at trial indicated that they could also be separately treated. Throughout trial the contracts were designated as "Contract 1," "Contract 2," and "Contract 3." Miner-Dederick's alleged costs were broken down by contract. On exhibits introduced as summaries toward the end of trial, Miner-Dederick's $4141.23 liability for extras was acknowledged in connection with Contract 1, and its $19,-936.45 liability was acknowledged as owing under Contract 3. Because of the manner in which the issues were submitted, the jury was not entitled to treat the contracts as one. All pertinent issues directed it to make separate findings for each contract. Issue No. 9, the damages issue, did not ask the jury to calculate an aggregate balance; to the contrary, three issues were submitted, one for each contract. This method of submitting the issues did not suggest to the jury that liabilities referable to one subcontract, *i. e.*, the $19,936.45 owed for Contract 3, should be offset against claims

arising from another subcontract, *i. e.*, the costs of completing Contracts 1 or 2. Unlike the jury in *Davis v. Campbell*, the jury in this case was not given a single issue encompassing all claims and liabilities. Furthermore, unlike the jury finding in *Davis v. Campbell*, the jury's findings, resulting in a net balance of zero, do not mirror the net amount of Miner-Dederick's claims, which was approximately $31,000.

The jury was instructed in Issue No. 9 to consider the contract price, Miner-Dederick's payments, and Miner-Dederick's costs of completing the contracts. It found that the difference was "NONE" for each contract. The effect of its findings for Contracts 1 and 2 is that Miner-Dederick was relieved of paying the balance due on the contract price. Thus, the jury found that neither party owed the other for Contracts 1 and 2, which implies that it found Miner-Dederick's costs of completing Contract 1 to be equal to the balance due on the contract price and found Miner-Dederick's costs of completing Contract 2 to be equal to the balance due on that contract price. However, the jury could not do the same thing for Contract 3 because Miner-Dederick had established only $2413.55 as costs of completing Contract 3 and had paid only $7650 of the contract price, resulting in a net liability of $19,936.45. Miner-Dederick does not contend that any less was owed for Contract 3. If it is assumed that the jury offset Miner-Dederick's costs under Contract 3 against the contract price thereby obtaining a balance of zero, the effect is to allow damages to Miner-Dederick greatly in excess of the amount pleaded or proved. There is no evidence to support a finding that Miner-Dederick's liability under Contract 3 was any less than $19,936.45. Having admitted it owed $19,936.45 for Contract 3, Miner-Dederick is liable to Mid-County for this amount.

■ To the extent that the court of civil appeals interpreted Issue No. 9 as not encompassing Miner-Dederick's liability for Contract 3, we agree with that court's holding. We disagree, however, with its holding that the $4141.23 owed by Miner-Dederick for extras in connection with Contract 1 was not included in the answer of "NONE" for damages for Contract 1. The jury was entitled to consider the extras as an element of contract price when computing damages for Contract 1; at trial, exhibits such as the one reproduced above and testimony suggested that the price of Contract 1 included these extras.

*Evidence to Support Issue No. 9*

■ As appellee in the court of civil appeals, Miner-Dederick presented a cross-point, urging that "in the alternative" the jury's answers to Issue No. 9 were against the great weight of the evidence. Miner-Dederick contends that the court of civil appeals erred in overruling this cross-point. It argues that when its interpretation of the jury findings was rejected by the court of civil appeals, the weight of the evidence to support the findings as interpreted by that court should have been considered.

In overruling the cross-point, the court of civil appeals stated, "Having filed a motion for judgment (as was clearly shown by the court's order), appellee is in no position to question the sufficiency of the evidence. A motion for judgment on the verdict is an affirmation that the findings of the jury are supported by competent evidence." Because of the dispute between the parties on the correct interpretation of the jury findings, we cannot agree with this holding. The authorities cited by the court of civil appeals based their holdings on the notion that a party should not be able to take inconsistent positions. That rationale is inapplicable in this case. Miner-Dederick's motion for judgment was made on the assumption that its interpretation would be accepted by the trial court. The trial court accepted this interpretation, but an adverse interpretation was argued by Mid-County on appeal. There is no inconsistency between Miner-Dederick's motion for judgment based on one interpretation and its challenge to the weight of the evidence under an adverse interpretation. Miner-Dederick was entitled to complain for the first time on appeal that the findings were

against the preponderance of the evidence. *See* Tex.R.Civ.P. 324.

We conclude therefore that Miner-Dederick's motion for judgment did not prevent a challenge on appeal to the weight of the evidence to support an adverse interpretation. Accordingly, we remand the cause to the court of civil appeals to consider whether the jury's answers to Issue No. 9 are contrary to the preponderance of the evidence.

*Liability of Mid-County for Suppliers' Claims*

 In its cross-action against Mid-County, Miner-Dederick alleged that several suppliers had furnished labor and materials for the work done by Mid-County on the subcontracts, but Mid-County had failed to pay them. Invoices for these claims were received by Miner-Dederick, which paid or made assurances to pay claims in an amount exceeding $10,000. Miner-Dederick alleged that it paid or became liable to pay the suppliers and sought to recover amounts representing their claims. Recovery was sought on the basis of Mid-County's subcontracts and on subcontractors' bonds executed by Mid-County with USFG as surety. The jury found in answer to Issue No. 10 that Miner-Dederick paid or became obligated to pay $10,000 to suppliers who furnished labor or materials for use by Mid-County on the subcontracts. Judgment was rendered by the trial court against Mid-County and USFG, but the court of civil appeals reversed, holding that Miner-Dederick had not become "legally obligated" to pay the claims.

The defense of Mid-County and its surety to liability on their bonds was based on the contention that certain contractual conditions set out in the bonds were not met. Each of the bonds contains the following provision:

"PROVIDED, HOWEVER, that this bond is executed pursuant to the provisions of article 5160 of the Revised Civil Statutes . . . and all liabilities on the bond shall be determined in accordance with the provisions of said article to the same extent as if it were copied at length herein."

The suppliers' failure to give Miner-Dederick notice of their claims in accordance with article 5160 is not disputed. *See* Tex.Rev. Civ.Stat.Ann. art. 5160, § B (Vernon 1971). According to Mid-County, because Miner-Dederick did not require the suppliers to give statutory notice of their claims, Miner-Dederick did not comply with the bonds and is therefore not entitled to recover on them.

We do not find it necessary to decide the question of liability on the bonds and hold that Mid-County is liable for suppliers' claims on the basis of indemnity provisions in its subcontracts. Although the subcontractors' bonds expressly limit recovery for suppliers' claims to only those claims established in compliance with article 5160, indemnity agreements between Miner-Dederick and Mid-County in the subcontracts contain no such limitation. The subcontracts obligate Mid-County "to furnish all labor, material and equipment . . . ." and provide that Mid-County "shall protect, indemnify and save [Miner-Dederick and the Owner] harmless from any and all claims, suits and actions of any kind or description . . . ." Miner-Dederick argues that it became liable to the suppliers because of article 5160. It argues that it waived the statutory notice requirements and thus incurred a legal obligation to pay the suppliers. Miner-Dederick relies on cases holding that strict compliance with the notice provisions of article 5160, enacted for the protection of the general contractor, may be waived by it. *See Texarkana Construction Co. v. Alpine Construction Specialties, Inc.,* 489 S.W.2d 941, 944 (Tex.Civ.App.—Texarkana 1972, writ ref'd n. r. e.); *General Insurance Co. v. Smith & Wardroup, Inc.,* 388 S.W.2d 262 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.). We agree. The suppliers' failure to give timely statutory notice of their claims does not preclude Miner-Dederick's right to indemnity from Mid-County. Mid-County's subcontracts do not limit Miner-Dederick's right to indemnity to claims perfected in accordance with the notice provisions of article 5160. These notice requirements could be waived by

Miner-Dederick without affecting its right to indemnity from Mid-County. To hold otherwise would allow a subcontractor to avoid the ultimate responsibility for debts owed to its suppliers on the basis of a statutory notice provision enacted for the general contractor's protection.

## APPLICATION OF MID–COUNTY

Mid-County contends that it is entitled to prejudgment interest at the rate of 9 percent per annum, or alternatively 6 percent, on the awards in its favor. Interest is claimed from March 6, 1976, alleged to be the date all work in connection with the subcontracts was completed, until March 14, 1978, the date of the trial court's judgment.

Prejudgment interest is recoverable as a matter of right when an ascertainable sum of money is determined to have been due and payable at a definite date prior to judgment. *Howze v. Surety Corp.*, 584 S.W.2d 263, 268 (Tex.1979). In its brief to the court of civil appeals, Mid-County contended that it was undisputed that March 6, 1976, was the date the entire job was completed. The court of civil appeals noted that this statement was not challenged by Miner-Dederick. Under this state of the record, Mid-County is entitled to prejudgment interest on the $2090.64 award for extras found by the jury, from March 6, 1976, to March 14, 1978. *See Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 95–96 (Tex. 1976).

The court of civil appeals correctly stated that the proper rate of prejudgment interest is 6 percent per annum. In *Pecos County State Bank v. El Paso Livestock Auction Co.*, 586 S.W.2d 183 (Tex.Civ.App. —El Paso 1979, writ ref'd n. r. e.), the court stated:

"[I]n 1975 the Legislature amended Article 5069–1.05, Tex.Rev.Civ.Stat.Ann., and fixed the usual rate of interest on judgments in this State at the rate of 9% per annum while leaving Article 5069–1.03 unamended at 6%. . . . As we understand it, the recovery of prejudgment interest where sought at common law as an element of damages was fixed at 6% because the courts by analogy adopted the legal rate of interest fixed by the statute as the standard by which to be governed in assessing those damages for the detention of money. *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11 (1897). That was the statutory predecessor to Article 5069–1.03 which is still at 6%. By Article 5069–1.01(b) '[l]egal interest' is still defined as that interest which is allowed by law when the parties to a contract have not agreed on any particular rate, and that is still the 6% as determined by Article 5069–1.03."

*Id.* at 187.

## CONCLUSION

The judgment of the court of civil appeals is reversed and the cause is remanded to that court for a determination of the merits of Miner-Dederick's counterpoint complaining that the evidence does not support Issue No. 9, and if that point be overruled, for entry of judgment in conformance with this opinion.

Dissenting opinion by SPEARS, J., joined by GREENHILL, C. J., and STEAKLEY and POPE, JJ.

SPEARS, Justice, dissenting.

I cannot agree with the majority's conclusion that as a matter of law the jury intended that Mid-County, which breached all three contracts, can now recover from Miner-Dederick, the non-breaching innocent party, especially on one of the contracts that was not substantially performed by Mid-County. I would affirm the judgment of the trial court which correctly held that because of its unjustified breach, Mid-County could not recover. The trial court also correctly allowed Miner-Dederick to recover on its counterclaim for the sums Miner-Dederick paid or became obligated to pay less the extra work and attorney's fees the jury found was owing to Mid-County. The trial court judgment was realistic and fair and conformed to the pleadings, the evidence, and the verdict.

The relevant jury findings, by unanimous verdict, are in summary that Mid-County failed to substantially perform contracts 1 and 3; that Mid-County performed extra work for which it was not paid in the amount of $2,090.64 and was entitled to $700.00 attorney's fees thereon; that Mid-County breached all three contracts with Miner-Dederick; that Mid-County "willfully, intentionally or in bad faith failed to substantially perform" all three contracts; that Miner-Dederick was damaged because of the breach of each of the three contracts; that the difference between the contract price and the reasonable cost of completion of each of the three contracts was "none"; and that Miner-Dederick paid or became obligated to pay for labor or materials furnished Mid-County for use on the three contracts the sum of $10,000.

The three contracts were for related subcontract work in the construction of a library building at Lamar University in Beaumont. Contract 1 was for tunnels; contract 2 was for a parking lot, and contract 3 was for street paving. The contractor, Miner-Dederick, plead and proved that:

The three contracts were treated by the parties as one. The billings of Mid-County did not normally separate the amount charged by contract. Normally, the billings and payments were in a lump sum amount which sometimes covered more than one contract. The parties, including the insurance company-surety of Mid-County, were identical in each contract.

The majority allows a recovery by Mid-County on contract 3. The majority relied on *Davis v. Campbell*, 572 S.W.2d 660 (Tex. 1978), for the proposition that although this court will not delve into the mental processes of the jury, "the constraints of the theory upon which the case was tried by the parties required the jury to offset the rent arrearages . . . in determining . . . profit." *Davis* actually calls for an opposite result. In *Davis* the jury was shown a chart similar to the charts shown the jury in the instant case. The *Davis* chart summarized the total damages claimed on the transaction and showed a net figure the plaintiff claimed. The jury's award was very close to the net figure. In rejecting the reasoning of the court of civil appeals, this court stated in *Davis*, "the court of civil appeals apparently overlooked the parties' trial theory and the jury's offset of the rent arrearage in reaching its verdict and granted Campbell a second set-off of the amount thereof." The theory we rejected in *Davis* is embraced by the majority.

The testimony and exhibits that reflect the analysis of the three contracts were obviously designed to assist the jury in undertaking the complex figures involved, not to create separate liabilities under separate contracts. The majority's result ignores the "TOTAL" column of the chart which reflects that the net result of the three contracts that Mid-County was indebted to Miner-Dederick in the amount of $31,078.24. Furthermore, the extract of Miner-Dederick's exhibit showing the analysis of the three contracts is incomplete. The complete exhibit shows a bottom line entitled:

"Net Amount claimed to be due to Miner Dederick by Mid county . . . . . . . . . . . . . . . . . . . . $41,585.89"

This exhibit, when examined in its complete form, brings the case squarely within the purview of *Davis v. Campbell*.

The majority's conclusion that the contracts must be treated as separate entities flies in the face of common sense applied by the jury and the trial court. No witness stated or implied that the contracts were treated separately; no exhibit indicates that the three contracts were not treated by both parties as one job. Even plaintiff Mid-County's original petition treated the three contracts as one and prayed for a single figure of recovery "due under said contracts." Although Defendant Miner-Dederick's cross-action was broken down in detail in its allegations of breaches and damages, it treated the contracts as one and alleged, "the three contracts were treated by the parties as one." The cross-action lumped the three contracts together by

praying for a single sum for all three contracts. Both attorneys, in open-statements, treated the contracts as one by speaking of a contract when outlining their contentions to the jury. The witnesses and attorneys throughout the trial referred to all three contracts as "the job," "the Lamar job," "the Miner-Dederick job," "the contract," "Mid-County's contract," "the project," "the site work of Mid-County," "Mid-County's work," and Mid-County's "undertaking." These phrases were used by both sides in the trial, including the owner of Mid-County.

All three contracts were executed simultaneously by the same parties with the same terms. Three identical payment bonds and three identical performance bonds were executed in connection with the three contracts. Mid-County's invoices frequently covered more than one contract. The parties, in their dealings during construction and in their correspondence when Miner-Dederick became dissatisfied, treated the three contracts as one. In computing the costs of completion of Mid-County's work before any lawsuit arose, the job supervisor for Miner-Dederick lumped together the total costs for all the work left undone by Mid-County. Mid-County did not keep its "labor daily time sheets" or "equipment daily time sheets" broken down into three separate contracts. "Backcharges" were not kept separately by contract.

Only two of the three contracts were in the record.[1] One contract required Mid-County "to complete in a good and workmanlike manner . . . all of the EXCAVATION, BACKFILL and MISCELLANEOUS ITEMS (as listed on attached sheet of Exclusions and. Inclusions), all of every description necessary to make the job complete for a NEW LIBRARY FACILITY and ATTENDANT SITE WORK for Lamar University, Beaumont, Texas . . . ." The other contract required Mid-County "to complete in a good and workmanlike manner . . . all of the STREET PAV-ING, PARKING LOT PAVING and SHELL DRIVEWAYS, all of every description necessary to make the job complete for a NEW LIBRARY FACILITY and ATTENDANT SITE WORK for Lamar University, Beaumont, Texas . . . ." There was an overall schedule for the order in which the work was to be done by the contractor and the sub-contractors to ensure that the different phases of the work would be accomplished in the proper sequence and that the next phase could begin as scheduled. Mid-County's work in performing its contracts was interspersed throughout that overall schedule, beginning with "cleaning the site" of trees and existing asphalt and excavating and backfilling where the footings of the building were to be poured, and ending with the final paving of driveway and parking areas. The work of all three contracts was so closely interrelated that it actually constituted three component parts of one job. For example, in support of Miner-Dederick's claims for its costs to complete the three breached contracts, Miner-Dederick's job foreman, Tommy Merriweather, testified:

A. . . . Contract three is very closely associated with contract one . . . .

\* \* \* \* \* \*

Q. Tommy, instead of saying the contracts are "tied," can you say "related" to the work?

A. Yes. They are related in the sense we excavated them on Colorado Street, we removed the street, we had to backfill it and get it to a certain grade, then the street we had to put right back in according to contract three. This is what I mean they are were related so we had to do some grading and paving beside the street, we had sidewalks to replace that were broken by equipment and the installation which was under contract three. It was very hard—this was something I had to do myself, in my own mind, was to try to decide whether what we did was

<hr>

1. Plaintiff's Exhibits 1 and 3 were in the exhibits received by this court, but Plaintiff's Exhibit 2 which presumably is the third contract and similar to the two contracts described is inexplicably absent.

part of contract one or part of contract three. This is what I am trying to relate to you, I was the one that was determined in trying and chargement [sic] to contract three.

Q. Was it a judgment that you attempted to make fairly and objectively?

A. Yes, because in my mind I was trying to look at the thing as a whole, I was trying to bring it together as a whole.

Q. Now, Tommy, as you completed this project we are talking about your job 510 cost, did you try to make a judgment as to which contract one, two, or three this work related to?

A. Yes, I did.

Q. And you have gone through these material invoices and they have been scheduled out on Exhibit 252, have you marked on there, looking at the diary, looking at the invoices, and looking at the work, and then put it in a particular category?

A. Yes, sir.

In distinguishing *Davis* the majority seeks solace in the circumstance that the charge there asked for one net figure of recovery instead of breaking down the recovery into three figures as was done in the present case. That difference certainly does not compel *as a matter of law* the conclusion that the jury treated the contracts as separate or that the theory upon which the case was tried negated the interrelationship of all three contracts. Several motives existed for Miner-Dederick's counsel to seek three separate answers on the three contracts. First, if there was no evidence or insufficient evidence to support the answer to one contract, the entire verdict would not fall because the three were lumped together in one sum. Second, the contracts were complicated and the exhibits were voluminous. It would clearly aid the jury to analyze the complete transaction by breaking it down rather than lumping all the figures together and hoping the jury would understand its complexity. Breaking it down into parts is not synonymous with trying the case on each separate contract independently. Min-

er-Dederick's counsel undoubtedly understood the elementary trial principle of trying to assist the jury in understanding the evidence.

Since the jury found that Mid-County did not substantially perform contract 3 and further found that Mid-County breached contract 3 causing Miner-Dederick damage, the trial court correctly concluded that the jury did not intend that Mid-County recover on that contract under their verdict. Nor is there any logical basis for construing the jury's verdict to allow Mid-County to recover under any of the contracts. The jury obviously "netted" out the claims of both sides in issue 9.

I further disagree with the majority's holding that Miner-Dederick is not entitled to recover against U.S. Fidelity and Guaranty as surety under Mid-County's bonds. The bonds were designated as payment and performance bonds and were furnished to protect Miner-Dederick from exactly what happened here. The jury found that Miner-Dederick became "legally obligated" to pay $10,000 to suppliers who furnished labor or materials for use by Mid-County on the subcontracts. Since Miner-Dederick waived the notices of claims, which existed solely for its own protection, the provisions of Tex.Rev.Civ.Stat.Ann. art. 5160 (Vernon 1971) were fully met and the surety's liability under the bonds was established. It is immaterial that the majority predicates Mid-County's liability on the indemnity provisions of the contract rather than the failure of Mid-County to perform under the contract. The crucial fact is that Miner-Dederick became legally obligated to pay for Mid-County's debts for labor and material incurred in connection with the job. The payment bonds bind the surety in sums certain, conditioned on the fact that "the said principal [Mid-County] shall pay all claimants supplying labor and material to him or a subcontractor in the prosecution of the work provided for in said contract . . . ." This condition was not met, and the surety should be held accountable under the clear, unambiguous provisions of the bonds.

I would affirm the judgment of the trial court which was in a much better position than an appellate court to know the theory on which the case was tried.

GREENHILL, C. J., and STEAKLEY and POPE, JJ., join in this dissent.