**Fernando WILLIAMS, et al., Appellants,**

v.

**Tom R. NORTHRUP, Appellee.**

**No. 12–81–0063–CV.**

Court of Appeals of Texas,
Tyler.

March 24, 1983.

Rehearing Denied March 27, 1983.

Wm. J. Rohrbach, Jr., Jas. J. Hippard, Sr., Gail E. Magers, Sullins, Johnston, Rohrbach & Magers, Houston, for appellants.

C. Charles Dippel, Marty D. Price, Sears & Burns, Houston, for appellee.

SUMMERS, Chief Justice.

This suit is by an ex-employee for recovery of his alleged vested percentage in the employer's contribution under a Thrift Plan, which percentage was forfeited by the employer and the administrators of the plan because of the ex-employee's knowing violation of a non-competition provision of the plan. Trial was to a jury. The court rendered judgment in appellee's favor for the money forfeited, prejudgment interest and attorney's fees. From this judgment appellant brings this appeal.

We reverse and render in part, modify in part, and as modified, affirm.

Williams and Crawford, Inc., is a firm of land planners and traffic consultants established in Houston in 1964. In March of 1972 the firm adopted a Thrift Plan and Trust,[1] effective as of November 1, 1971,

---

1. On October 31, 1975, the Thrift Plan was terminated and the Williams and Crawford,

for the purpose of encouraging savings among employees. The Thrift Plan in controversy provided for an employer contribution equal in amount to the employee contribution, and allowed the employee to contribute up to ten percent of his annual salary. The Plan provided for trustees, and Fernando Williams and R. Harold Crawford (appellants herein) were the only trustees of the Plan, as well as of the subsequently formed Employee Profit Sharing Plan and Trust. (The Plan also provided for a Plan Committee and as pertinent here, the committee's function was to perform the duties and exercise the powers and discretion given to it by the Plan, and the committee's decisions were to be final, conclusive and binding.)

The Thrift Plan provided that upon an employee's termination of employment for reasons other than retirement, death, disability or discharge, the member is entitled to all of his contributions to the plan *and* the amount which constitutes his "vested percentage" in his Employer Contribution Account as of the Valuation Date or Allocation Date concurrent with or next preceding the date of his termination of employment. Such vested percentage was to be determined in accordance with a schedule which was incorporated into the Thrift Plan. The Plan further provided that if a forfeiture of the vested percentage in the employer's contribution occurs for any reason, the forfeited amount is allocated among the remaining members of the Plan. Of controlling importance to this litigation, Section 13.5 of the Plan provides:

> If, within a radius of 100 miles of any place of business of any Employer, and within the two-year period following termination of employment or Retirement, a terminated or retired Member does any act or engages in any occupation or employment which is in competition with the business of an Employer, as determined by the Board of Directors of the Employer, *the terminated or retired Member shall be notified by the Employer that his*

Inc.'s Employee Profit Sharing Plan and Trust was created, and the corpus of the Thrift Plan

> *benefits hereunder, if any, in excess of his own contributions, shall be forfeited unless such competitive conduct is discontinued within a period that has been prescribed by the Employer.* In such a case, any benefit payable to the terminated or retired Member in excess of his own contributions, shall be suspended during the prescribed period, and, if the competitive conduct has not ceased prior to the expiration of such period, the terminated or retired Member shall be deemed to have forfeited his right to any such benefit hereunder and payments thereof shall be terminated on a permanent basis. Provided, however, no forfeiture provided for under this section shall be valid unless it is confirmed by a resolution of the Board of Directors of an Employer adopted before the termination of the Plan or the permanent discontinuance of contributions to the Plan by such Employer. (Emphasis added.)

Tom Northrup (appellee herein) was employed by the firm in 1965 as a planner. Appellee applied in writing for membership in the plan on August 31, 1972, agreeing to contribute seven percent of his annual pay and to make a lump-sum payment for the period November 1, 1971, through August 31, 1972. On September 17, 1974, Northrup requested withdrawal of the maximum amount allowable from the plan, and was paid $4,090.80 on November 1, 1974. As of December 31, 1974, when Northrup resigned from employment, the balance of his employee's contribution to the plan was $5,509.09. He was paid that sum. The employer's contribution applicable to him was $9,327.88, and it is undisputed that if Northrup is entitled to any vested percentage in the employer's contribution, that amount is $5,596.73 or sixty percent of the employer's contribution, pursuant to the schedule incorporated into the Plan.

After his November 1974 withdrawal Northrup met with Williams and Crawford and indicated his unhappiness with his salary. After discussion it was agreed to give

was transferred to the trustees of the Profit Sharing Plan.

Northrup a $5,000.00 bonus and promote him to the position of vice president of the firm. Within a few days of December 31, 1974, Northrup advised Williams and Crawford of his intention to leave the firm at the end of 1974 and his acceptance of a position with Vernon Henry and Associates. The record reflects that all parties involved in this action knew at all times that Vernon Henry and Associates [2] was a competitor of Williams and Crawford, Inc. In the last meeting of the firm with Northrup, the Thrift Plan was discussed, including Section 13.5.

On January 31, 1975, the Board of Directors of Williams and Crawford, Inc., passed a resolution in accordance with the Thrift Plan, reciting Northrup's competition in violation of the Plan and declaring a forfeiture of his vested percentage in the employer's contribution. On that same date, the Thrift Plan Committee likewise passed a resolution finding Northrup to be in competition and declaring a forfeiture.[3] The threshold issue for a determination of this case is whether or not Williams and Crawford's failure to notify Northrup to cease his competitive conduct within a prescribed period of time in violation of the terms of the Plan was necessary under the circumstances of the case to permit a forfeiture of the employer's contribution.

The case was submitted to the jury on five special issues. The jury found in answer to such issues that: (1) Williams and Crawford, Inc., failed to specify a period of time in which Northrup must cease his competitive conduct or he would forfeit his benefits under the Plan in excess of his own contributions; (2) did not find that Williams and Crawford, Inc., failed to confirm by resolution the forfeiture of Northrup's vested percentage in the Thrift Plan prior to the termination of the Plan; (3) reasonable attorney's fees were $2,400.00 in the trial court, $500.00 in the Court of Civil Appeals and $500.00 in the Supreme Court; (4) the firm of Vernon Henry and Associates was in competition with the firm of Williams and Crawford, Inc., from January 1, 1975, to December 31, 1976; and (5) Northrup knew or should have known that the firm of Vernon Henry and Associates was in competition with the firm of Williams and Crawford, Inc., from January 1, 1975, to December 31, 1976.

In answer to Special Issue No. 1, the jury in effect found that appellant trustees forfeited appellee Northrup's vested pension benefits without first having complied with the strict prerequisites required by the trust to permit a forfeiture. Appellants' motion to disregard the jury's answer to Special Issue No. 1 and render judgment on the remainder of the verdict was overruled. Appellee's motion to disregard the jury's answers to Special Issues Nos. 2, 4 and 5 and render judgment upon the verdict was sustained. Accordingly, the court on Sep-

---

**2.** The record reflects that Northrup was employed by Vernon Henry and Associates from January 1, 1975, until April 19, 1979. In connection with Northrup's employment with Vernon Henry and Associates, a news release was issued and published through the Houston Chamber of Commerce and the Houston Post newspaper announcing Northrup's employment as a vice president of Vernon Henry and Associates. An announcement card was also sent out by Vernon Henry and Associates to clients of Williams and Crawford advising of Northrup's employment by Vernon Henry and Associates.

**3.** The Committee's resolution was introduced by Northrup into evidence and provided:

RESOLVED, that Mr. Tom R. Northrup be and is hereby determined to be in the employment of a company which is in competition with the business of Williams & Craw-

ford, Inc.; that said former employee informed Fernando H. Williams, President of Williams & Crawford, Inc., that he was leaving Williams & Crawford, Inc., to work for a company in competition with the business of Williams & Crawford, Inc.; that said former employee was aware that he was in violation of Article XIII [of the Williams & Crawford, Inc., Thrift Plan]; that said former employee be and is hereby determined to have forfeited all his "vested percentage" in his Employer Contribution Account as in accordance with the provisions of Article XIII; that the Trustee of the Plan be and is hereby authorized to re-distribute the $9,599.88 in the Employer Contribution Account as in accordance with the provisions of Article VIII; that said employee be and is hereby terminated from the Plan effective December 31, 1974.

tember 15, 1980, rendered judgment ordering that Northrup recover jointly and severally from Fernando Williams and Harold Crawford, Trustees of the Williams and Crawford, Inc., Thrift Plan, and of the Williams and Crawford, Inc., Employee Profit Sharing Plan and Trust, judgment for: (a) $5,596.73 as the principal amount due; (b) interest at the rate of six (6%) percent per annum on the principal amount to date of judgment; (c) $2,500.00 as attorney's fees for the preparation and trial of the case; (d) $1,200.00 as attorney's fees for the appeal, if any, to the Court of Civil Appeals; (e) $1,000.00 as attorney's fees for the appeal, if any, to the Supreme Court of Texas; (f) interest at the rate of nine (9%) percent per annum on the judgment from the date of judgment until paid.

Appellants assert ten points of error in their brief and an additional point of error in a supplemental brief to the court. Appellants' points one through six are grouped and will be addressed accordingly. The first six points state that the trial court erred in disregarding as immaterial the jury's answer to (1) Special Issue No. 2, (2) Special Issue No. 4, and (3) Special Issue No. 5; (4) in failing to sustain ground number 2 of the appellants' motion for instructed verdict or alternatively to withdraw the case from the jury and to render judgment that plaintiff take nothing; (5) in failing to render judgment that Northrup take nothing because it is undisputed that the employer and Plan Committee decided that appellee knowingly violated Section 13.5 of the Plan and forfeited his vested percentage in the employer's contribution for that reason, and in the absence of any pleading by Northrup or jury finding that such decisions were arbitrary or fraudulent, they are conclusive; and (6) in failing to render judgment that Northrup take nothing because the undisputed evidence and jury findings demonstrate that Northrup knowingly competed with the employer within a one hundred mile radius for a two-year period without intention to cease such conduct if notice to cease had been given.

Appellants contend under their first six points that notice to cease would have been futile and thus was not required for a forfeiture of Northrup's vested interest in the employer's contribution. They argue that Northrup's conduct of knowingly competing with Williams and Crawford, Inc., automatically effected a forfeiture of his vested interest; that appellee should be bound by the non-competition terms of the trust agreement, *but* appellants' failure to give the requisite notice pursuant to the agreement was not required under the circumstances. Appellants urge that the jury's answers to issues 2, 4 and 5 are material and rely on the case of *Southern Pacific Transportation Company v. Allen*, 525 S.W.2d 300, 304 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ), asserting that the court had no jurisdiction to disregard the answers to such issues. Applying Rule 301 [4] we find such issues to be immaterial and properly disregarded upon appellee's motion.

Appellants rely on *Neuhoff Brothers Packing Management Corp. v. Wilson*, 453 S.W.2d 472, 475 (Tex.1970), for the position that a good faith action made by the Trustees should be binding and conclusive on all parties at interest. In *Neuhoff, supra,* the employee was terminated for fraudulent activities while employed and the employer committee withheld payment of profit-sharing funds to the terminated employee. The court held that the committee's failure to hold a hearing for plaintiff was not evidence of a lack of good faith, especially since plaintiff *admitted* the conduct held by the committee to be dishonest and there was no evidence plaintiff requested a hearing. Moreover, the court held "that under the terms of the instrument governing the profit sharing plan such determination was conclusive as to all parties and the committee's denial of plaintiff's claim was proper." Although the trust which is the subject of this suit contained similar language, the facts are distinguishable. In *Neuhoff* the trust instrument did not include a requisite notice provision as contained in the Trust

4. All references to rules are to Texas Rules of Civil Procedure unless otherwise noted.

Plan which is the subject of the instant suit and we cannot agree with appellant's argument that Northrup's act of knowingly violating the competition clause of the Plan combined with their good faith termination of his employer-contributed benefits precludes recovery.

Appellant cites *Dollgener v. Robertson Fleet Services, Inc.*, 527 S.W.2d 277 (Tex. Civ.App.—Waco 1975, writ ref'd n.r.e.), for justifying the propriety of the non-competition provisions of the subject Thrift Trust Plan. In *Dollgener* a retired employee brought an action against his former employer and trustees of a profit-sharing pension plan to recover benefits under a plan which was funded entirely by the employer. A clause in the plan provided for the forfeiture of all interest in the plan if the former employee became a competitor of the employer. The employee, knowing of the provision violated it and claimed benefits. The court held that the forfeiture provision in the plan imposed a valid condition on the employee to receive pension benefits and did not constitute an unreasonable restraint of trade or violate the public policy of the State. In *Dollgener,* there was no provision in the trust plan, as in the instant case, requiring the trustees, before effecting a forfeiture, to provide the employee with a reasonable prescribed time to cease competitive conduct, and a failure of the trustees to follow this procedure. Thus, *Dollgener* is clearly distinguishable.

Appellant cites *Golden v. Kentile Floors, Inc.*, 512 F.2d 838 (5th Cir.1975), for the position that the reasonableness of a non-competition clause is to be adjudged by examining its business context and its justification. In *Golden,* an ex-employee brought suit for recovery of benefits under a non-contributory profit-sharing plan. The trustees in that case gave Golden notice to discontinue his competitive conduct or risk a forfeiture and despite this notice the employee continued competitive employment. Although required by the trust plan, no such notice was given by the trustees to Northrup in the case at bar. This primary difference clearly distinguishes the facts in *Golden* from the instant case.

Appellants also rely on *Miller v. Associated Pension Trusts, Inc.*, 541 F.2d 726 (8th Cir.1976), which poses a similar fact pattern to the case at bar. In *Miller,* the employee ceased employment with a company and commenced employment with a competitor. The plan in question provided that if the trustees of the plan found that any ex-employee engaged directly or indirectly in conduct prejudicial to the company's interest, *and if after due notice and hearing, he continued such prejudicial conduct,* the ex-employees vested percentage in the employer's contribution could be terminated after notice and opportunity to be heard before the trustees. Miller knowingly violated the provisions of the plan. The trustees did not notify Miller of his violation of the provision nor did they afford an opportunity to Miller to be heard at a hearing on the forfeiture of any benefits under the plan. The trustees forfeited Miller's benefits under the plan and he then sued to recover benefits. The trial court denied Miller relief, and the appeals court held that the action of the trustees is conclusive unless the trustees can be shown to have acted arbitrarily or in bad faith. The court further opined involving the failure of the trustees to notify Miller of his competition in violation of the plan or to afford him notice and hearing before forfeiture and held as follows:

> The notice and hearing provisions of the Plan were clearly intended to protect (1) a former employee who inadvertently engages in activities that could result in forfeiture and who would cease such activities upon proper notice, and (2) a former employee who does not in fact engage in such activities. *Since Miller concedes his activities were knowingly entered into and makes no claim that he would have ceased to engage in them upon formal notice from the trustees, there has been no showing of prejudice from the failure of the trustees to provide formal notice and hearing that would compel a finding of arbitrary or capricious conduct, or conduct amounting*

*to bad faith.* (Cases omitted and emphasis added.)

The holding in *Miller* reasons that Miller was not prejudiced by the failure of the trustees to notify him of his violation of the non-competition provision of the plan. The case at bar is distinguishable because, unlike *Miller,* there is a disputed issue from the evidence adduced whether Northrup would have ceased his competitive conduct if notice had been given pursuant to the terms of the Plan. Since such issue was not submitted to the jury, we cannot conclude, as appellant suggests, that Northrup would have refused to cease his competitive employment even if he had been notified pursuant to Section 13.5 of the Trust Plan.

■ It is not disputed that appellants failed to give the required notice prior to forfeiture. Under the facts of this case strict adherence to the terms of the trust should be required. Moreover, forfeitures generally are not favored and courts are reluctant to enforce them. See Tex.Jur.2d, Forfeitures, §§ 3 and 11; *Parham v. Glass Club Lake, Inc.,* 533 S.W.2d 96, 99 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.); *Dickenson v. Board of Trustees,* 204 S.W.2d 418, 423 (Tex.Civ.App.—Fort Worth 1947, writ ref'd).

Northrup pleaded, proved and obtained a jury finding in issue No. 1 that the trustees failed to lay a predicate essential to the valid forfeiture of Northrup's vested pension. The critical question as to whether Northrup would have ceased competition upon receiving the required warning was a fact issue raised by the evidence but *not* submitted to the jury, so it must either be considered as waived by the trustees or deemed found in support of the judgment. Rule 279.

■ The testimony reflects that Northrup was cognizant at all times of his competitive conduct. It would be improper, however, to speculate as to whether Northrup would have discontinued his competitive conduct to prevent a forfeiture. This disputed fact issue was *not* submitted to the jury, and since the trustees had the burden of submitting this issue their failure to request such submission, or to object to its omission, waives such issue upon which they rely. Rule 279; *Harris County Welfare Unit v. Caloudas,* 590 S.W.2d 596, 598 (Tex. Civ.App.—Houston [1st Dist.] 1979, no writ); also see *Baker v. Mays & Mays,* 199 S.W.2d 279, 285 (Tex.Civ.App.—Fort Worth 1947, writ dism'd). Under the "cluster of issues" principle stated in Rule 279, when a ground of recovery or defense consists of more than one issue, if one or more of the issues necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted and answered by the jury and one or more of such issues are omitted, without objection by the party complaining of the judgment, then the omitted issue, if raised and supported by the evidence, must be deemed as found by the trial court in such a manner as to support its judgment. *Meacham v. Loving,* 155 Tex. 279, 285 S.W.2d 936, 939 (Tex.1956); *Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 991 (Tex.1949); *Hoffman v. Wall,* 602 S.W.2d 324, 326 (Tex. Civ.App.—Texarkana 1980, writ ref'd n.r. e.); *Craker v. City Transportation Company of Dallas,* 316 S.W.2d 447, 450, 451 (Tex.Civ.App.—Texarkana 1958, writ ref'd n.r.e.). The unsubmitted issue as to whether notification to Northrup pursuant to the terms of the trust would have been futile must be deemed as found by the trial court in support of the judgment. Having so found, appellants' first six points are overruled.

Appellants in their seventh and eighth points assert that the trial court erred (7) in awarding reasonable attorney's fees, and (8) in awarding attorney's fees in excess of the jury's answers to Special Issue No. 3. Northrup's initial trial pleading made no plea for the recovery of attorney's fees under Art. 2226.[5] Appellee herein instead initially specially plead for recovery of attor-

---

5. Such reference is to Tex.Rev.Civ.Stat.Ann. and all future article references refer to the same unless otherwise noted.

ney's fees pursuant to ERISA.[6] Trustees filed their motion for instructed verdict alleging *inter alia,* that they were not liable for attorney's fees under ERISA because ERISA was not applicable to Northrup's claim. The motion was overruled. Thereafter, the court allowed Northrup to file a trial amendment by which he alternatively sought recovery of attorney's fees under Art. 2226. We conclude that appellants' argument of the non-applicability of attorney's fees under ERISA is valid. Appellants also assert that recovery of attorney's fees is inappropriate under Art. 2226 and its 1979 amendment arguing that to apply the statute would be an unconstitutional retroactive application and improper in this case. The record shows that Northrup had made a claim for the vested amount on two occasions, one in November 1975 and again in January 1977. Appellants contend that such claims for payment were not claims within the class enumerated by Art. 2226. Appellants also emphasize that it was not until the 1977 amendment to Art. 2226 (after the later demand by Northrup) that suits for breach of a written contract were included among the class of cases for which attorney's fees were allowable. Trustees thus contend that Northrup's trial amendment for attorney's fees under Art. 2226 is an ineffective presentment, because the trustees were not placed on notice of being subject to the imposition of liability of attorney's fees for failure to pay.

■ In Texas the well-settled law is that attorney's fees are not recoverable in an action unless provided by statute or a contract between the parties. *New Amsterdam Casualty Co. v. Texas Industries, Inc.,* 414 S.W.2d 914, 915 (Tex.1967); *Equitable Trust Co. v. Lyle,* 627 S.W.2d 824, 826 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.). The statutory provisions allowing recovery of attorney's fees are in derroga-

tion of the common law and must be subject to strict construction. *Van Zandt v. Fort Worth Press,* 359 S.W.2d 893, 995 (Tex. 1962). The necessary statutory basis for an award of attorney's fees can be found only in the express terms of the statute in question. *Knebel v. Capital Nat'l Bank in Austin,* 518 S.W.2d 795, 804 (Tex.1975).

■ If a plaintiff meets the requirements of Art. 2226 he is entitled to attorney's fees.[7] *Karol v. Presido Enterprises, Inc.,* 622 S.W.2d 638, 640 (Tex.App.—Austin 1981, no writ). In addition to having a claim within the class enumerated by Art. 2226, appellee must establish that: (1) the claim was presented to the entity owing it and (2) the just amount owing on the claim was not tendered within 30 days after presentment. Failure to establish both elements would require denial of an award of attorney's fees. See *Sterling Construction Company, Inc. v. West Texas Equipment,* 597 S.W.2d 515, 518 (Tex.Civ.App.—Amarillo 1980, no writ); *W.G. Tufts and Son v. Herider Farms, Inc.,* 485 S.W.2d 300, 303 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.). Art. 2226 does not require a formal presentment and the statute provides that it is to be "liberally construed to promote its underlying purposes." The assertion of a claim and the request for payment is adequate. *Karol, supra* at 642. Moreover, as long as the presentment is 30 days before trial the statute is satisfied. In the instant case the two letters requesting payment on the claim are adequate to satisfy a "presentment" within the statute. The primary purpose of the requirement for presentation of a claim is to allow the person against whom it is asserted an opportunity to pay the claim within 30 days after they have notice of the claim without incurring an obligation for attorney's fees. See *Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex.1981);

---

6. The Pension Reform Act of 1974 (the Employee Retirement Income Security Act) [ERISA], Section 502(g).

7. Art. 2226 as amended in 1979, provides for the recovery of reasonable attorney's fees in addition to one's claim and costs for the successful prosecution of a suit founded on a *written contract.* Section 2 of the 1979 amendatory act provides that the act is remedial in character and is intended to apply to all pending actions regardless of the time of institution of the suit. 1979 Tex.Gen.Laws, ch. 314, § 2 at 718.

*Huff v. Fidelity Union Life Ins. Co.,* 158 Tex. 433, 312 S.W.2d 493, 500 (1958). Applying the statute is proper in this suit upon a written contract where the breach occurred prior to the amendments to Art. 2226. See *Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 689 (Tex.1981). Having so determined appellant's seventh point is overruled.

Finally, appellant's eighth point addresses the fact that the judgment for attorney's fees does not conform to the verdict and that if attorney's fees are due the judgment must be reformed to conform with the verdict. We agree. Rule 301 provides in substance that the judgment is to conform to the pleadings, the nature of the case proved, and the verdict; provided, that the court may upon motion and notice disregard any special issue jury finding that has no support in the evidence. The record before us does not disclose any motion to disregard the jury finding on the attorney's fees and the trial court is not empowered to disregard a material jury finding on its own initiative in the absence of such motion. *Durham v. Uvalde Rock Asphalt Co.,* 599 S.W.2d 866, 876 (Tex.Civ.App.—San Antonio 1980, no writ); *Southern Pacific Transportation Co. v. Allen, supra* at 304; *Hensley v. Jones,* 492 S.W.2d 283, 285 (Tex.Civ. App.—Houston [14th Dist.] 1973, no writ). Accordingly, appellants' eighth point is sustained, and the judgment will be modified to conform to the jury's verdict.

Appellants assert in their ninth and tenth points that the trial court, (9) erred in awarding prejudgment interest, and (10) the trial court's award of prejudgment interest is too indefinite and uncertain to constitute an enforceable judgment. While Northrup's pleadings claim entitlement to the principal amount on December 31, 1974, the Thrift Plan gives the Plan Committee the discretion to make payments in a lump sum, through purchase of a single premium, nontransferrable annuity contract payable over the life of the member, or by periodic cash installments over a period not to exceed the life expectancy of the member.

Prejudgment interest is recoverable as a matter of right when an *ascertainable sum* of money is determined to have been due and payable at a *definite date* prior to the judgment. *Miner-Dederick Const. Corp. v. Mid-City Rental,* 603 S.W.2d 193, 200 (Tex.1980); *Howze v. Surety Corp.,* 584 S.W.2d 263, 268 (Tex.1979). The record does not support the award of prejudgment interest, since the Trustees by Section 15.1 and 15.2 of the Trust Plan reserved broad powers as to the date and method of payments made to the beneficiary, and thus there is no definite and ascertainable sum and due date for its payment prior to judgment herein. Having so found, appellants' ninth and tenth points of error are sustained.

In a supplemental brief, designated as appellants' amended brief, appellants assert an additional point nine as follows: "Assuming that facts do exist in support of the [sic] an implied finding that Northrup would have ceased competitive employment had notice to cease been given, such a finding is against the great weight and preponderance of the evidence." We overrule this point as being without merit. We have already concluded in addressing appellants' first six points that a factual issue was raised and supported by the evidence as to whether Northrup would have discontinued his competitive conduct if given the notice required by Section 13.5 of the Plan; that since appellants, having the burden under such issue, failed to request or object to the omission of such issue, the issue must be deemed as found by the trial court in support of its judgment.

We reverse and render by deleting that part of the trial court's judgment providing for an award of prejudgment interest and modify that part of the judgment awarding attorney's fees to conform with the jury's verdict. Accordingly, as modified, the judgment is affirmed to provide that appellee Tom R. Northrup recover from appellants the principal amount due of $5,596.73; $2,400.00 as attorney's fees for the preparation and trial of the case, $500.00 as attorney's fees for appeal to the court of appeals and $500.00 as attorney's fees for appeal, if

any, to the Supreme Court of Texas, with interest at the rate of nine (9%) per cent per annum on the judgment from the date of judgment until paid.

Under Rule 448, we tax all costs on appeal and in the court below equally against appellants and appellee.