Edward F. DOLLGENER, Appellant,

v.

ROBERTSON FLEET SERVICES, INC., et al., Appellees.

No. 5448.

Court of Civil Appeals of Texas, Waco.

Sept. 4, 1975.

Rehearing Denied Sept. 25, 1975.

Hassell & Riley, Douglas Riley, Jr., Dallas, for appellant.

Rain, Harrell, Emery, Young & Doke, Marshall M. Searcy, Jr., Dallas, for appellees.

HALL, Justice.

This suit is against the plaintiff's former employer, Robertson Fleet Services, Inc. (hereinafter "RFS"), and the trustees of a profit-sharing pension plan which was wholly funded by the company. The plaintiff seeks benefits under the plan in the amount of $18,619.58. The trial court held that under the terms of the plan the plaintiff forfeited his interest in it when he began competing with RFS after leaving its employment, and rendered summary judgment denying recovery. We affirm.

There is no dispute in the material facts. The plaintiff is 55 years of age. For the past 30 years he has worked only as a salesman of automotive and truck parts. He was continuously employed in this capacity by RFS from September, 1959, until July 1, 1973. In November, 1961, the company voluntarily established a profit-sharing pension plan for its employees and set forth the terms of the plan in a written instrument. The plan is funded entirely by the company, and the plaintiff has never contributed money to it. Accrued benefits under the plan are payable upon an employee's retirement, disability, death, or termination of employment. However, pertinent here, Sections 7.12 and 7.13 of the plan provide in part as follows:

"7.12 As to any Participant who is dismissed for either fraud or dishonesty . . . or who becomes a competitor or an employee of a competitor, such Participant shall receive no benefits whatsoever under the Plan, and all his interest in the Plan shall immediately be forfeited.

"7.13 Any forfeitures arising under Section 7.12 shall be allocated to the accounts of the remaining Participants in accordance with [the terms of the Plan]."

The termination of the plaintiff's employment with RFS was voluntary on his part. Immediately upon leaving RFS, he organized a family-held corporation known as Texas Fleet Supply, Inc., and began employment as its manager and supervisor in competition with RFS.[1] At this time he was familiar with the provisions of paragraph 7.12 of the Plan.

Contracts not to compete are in restraint of trade and are not enforceable if unreasonable in their terms. *Wissman v. Boucher*, 150 Tex. 326, 240 S.W.2d 278, 280. Restraints of trade unlimited as to time or space are generally held to be unreasonable. *Justin Belt Company, Inc. v. Yost*, (Tex. Sup., 1974) 502 S.W.2d 681, 685. The plaintiff likens the clause in question to a covenant by him not to compete with RFS upon termination of his employment and asserts that, being unlimited in its terms as to either time or area, it is void and unenforceable.

The question of whether forfeiture provisions like the one before us in noncontributory profit-sharing pension trusts are effectually covenants not to compete and are in restraint of trade has not been decided in Texas. However, a clear majority of courts of other jurisdictions have held that such clauses, though unrestricted in time and

---

1. Although the trial record does not conclusively show that the plaintiff voluntarily left RFS or that his new employment is in competition with RFS, he expressly admits the fact of competition in his brief, and in oral argument before this court he stipulated that he voluntarily terminated his employment with RFS.

territory, are not subject to the same considerations of public policy that relate to covenants not to compete, and that they are not in restraint of trade. The rationale of this rule is set forth in the oft-cited case of *Rochester Corporation v. Rochester,* 450 F.2d 118 (4th Cir. 1971). Deciding the question under the law of the State of Virginia for the first time, the court stated in that case [at 450 F.2d 122–123]:

"The authorities, though, generally draw a clear and obvious distinction between restraints on competitive employment in employment contracts and in pension plans. The strong weight of authority holds that forfeitures for engaging in subsequent competitive employment, included in pension retirement plans, are valid, even though unrestricted in time or geography. The reasoning behind this conclusion is that the forfeiture, unlike the restraint included in the employment contract, is not a prohibition on the employee's engaging in competitive work but is merely a denial of the right to participate in the retirement plan if he does so engage. A leading case on this point is *Van Pelt v. Berefco, Inc.,* [1965] 60 Ill.App.2d 415, 208 N.E.2d [858] at p. 865, where, in passing on a forfeiture provision similar to that here, the Court said:

'The contributions and distributions of benefits under the retirement plan involved here were made voluntarily according to provisions mutually accepted by defendants and plaintiff. Having admittedly breached the provisions of the plan plaintiff cannot be heard to complain that he is entitled to the benefits thereof, and no question of lack of good faith is presented for our determination as we construe Massachusetts law.

'Commerce Clearing House Pension Plan Reporter, par. 56, 295 states: "Many plans permit the employer, or the retirement committee in charge of administering the plan, to reduce or terminate benefits in case the employee, after his retirement, engages in any activity which is competitive with or detrimental to the employer's business." The conditional retirement plan provision in the instant case was designed by the employer to protect against competition by former employees who may retire and obtain post-retirement benefits from them while at the same time engaged in competitive employment. The employer, as part of a non-contributory plan may provide for such contingencies.

'There is no restraint here upon plaintiff's right to future employment. He is free to engage in competition with [his former employer] without restraint or interference by defendants, but he is not free to do so while accepting benefits of the retirement plan to which he contributed nothing.' "

Some of the more recent cases in accord with the majority rule are *Hudson v. North Carolina Farm Bureau Mutual Ins. Co.,* (1974) 23 N.C.App. 501, 209 S.E.2d 416, 418; *Alco-Columbia Paper Service, Inc. v. Nash,* (La.App., 1973) 273 So.2d 630, 632; *Evo v. Jomac, Inc.,* (1972) 119 N.J.Super. 7, 289 A.2d 551, 554; *Swift v. Shop Rite Food Stores, Inc.,* 83 N.M. 168, 489 P.2d 881 (1971); *Alldredge v. City National Bank & Trust Co. of Kansas City,* (Mo., 1971) 468 S.W.2d 1, 3; *Garner v. Girard Trust Bank,* (1971) 442 Pa. 166, 275 A.2d 359, 362; *Brown Stove Works, Inc., v. Kimsey,* (1969) 119 Ga.App. 453, 167 S.E.2d 693, 695; *Flynn v. Murphy,* (1966) 350 Mass. 352, 215 N.E.2d 109, 110; *Molburg v. Hunter Hosiery, Inc.,* 102 N.H. 422, 158 A.2d 288 (1960).

The minority view is expressed in *Food Fair Stores, Inc., v. Greeley,* 264 Md. 105, 285 A.2d 632, 638 (1972) as follows:

"We recognize that the Plan, as a contract, does not restrain Greeley's rights to future employment in the sense that it does not present the classic situation wherein the employee, by assuming a position in a competitive field exposes himself to a suit by the employer for breach of contract or by way of a bill for injunctive relief. Here, Greeley is free to en-

gage in competition without restraint or interference by Food Fair, but he is not free to do so and receive the benefits of the Plan. . . . However, one cannot gainsay the fact, that whether the restraint on the employee is by way of an employment contract arming the employer with legal sanctions or by virtue of a pension plan, which holds over the employee the loss of benefits should he compete, in either instance, the employee is subject to an economic loss should he breach the restrictive covenant."

■ If we should adopt the plaintiff's view that clause 7.12 in the pension plan before us should be treated as a negative covenant to prevent post-employment competition, it is the settled rule that such a covenant does not violate the public policy of this State and will be enforced by the courts even though the contract is not reasonably limited as to time or region. A court of equity will reform the contract and enforce it by granting an injunction restraining the defendant from competing for a time and within an area that are reasonable under the circumstances. *Weatherford Oil Tool Company v. Campbell* (1960) 161 Tex. 310, 340 S.W.2d 950, 952.

■ However, we agree with the distinction made in the majority view, above, between a negative covenant not to compete and a forfeiture provision in a noncontributory profit-sharing pension trust; and we believe the rule of construction based upon that view is more in keeping with the public policy of this State. Accordingly, we hold that the clause in question is a valid condition to the right to receive post-termination benefits from such a trust. It is not a vehicle by which RFS can enjoin competition by the plaintiff, and reformation of the provision and enforcement of it by the courts as a negative non-competitive agreement is neither required nor practical. It does not constitute an unreasonable restraint of trade and does not violate the public policy of this State. If public policy is involved, here, "it is the public policy which permits the utmost freedom of contract between parties of full age and competent understanding and requires that their contracts, when freely and voluntarily entered into, shall be held sacred and enforced by the courts." *Crutchfield v. Associates Investment Company*, (Tex.Civ.App. —Dallas, 1964, writ ref.) 376 S.W.2d 957, 959. Having intentionally violated the trust provision, the plaintiff is precluded from recovering benefits as a matter of law, and the take-nothing summary judgment against him was proper.

The plaintiff raises other contentions and arguments. All are without merit and are overruled. The judgment is affirmed.