**PEAT, MARWICK, MITCHELL & CO., Appellant,**

v.

**Joe E. SHARP, Appellee.**

No. 8992.

Court of Civil Appeals of Texas, Amarillo.

July 31, 1979.

Rehearing Denied Aug. 29, 1979.

Underwood, Wilson, Sutton, Berry, Stein & Johnson, James A. Besselman, Amarillo, for appellant.

Gibson, Ochsner & Adkins, Wayne P. Sturdivant, Amarillo, for appellee.

DODSON, Justice.

Plaintiff Peat, Marwick, Mitchell & Co., a partnership engaged in the practice of certified public accounting, brought this action for damages against Joe E. Sharp, a withdrawing partner, for alleged violations of a covenant not to compete contained in the partnership agreement. Sharp counterclaimed for certain accrued benefits arising under the agreement. The parties submitted the questions of liability to the trial court. The court ruled that the negative covenant was not limited to a reasonable space. The court further ruled, however, that Mr. Sharp was liable in damages for violating the covenant and that he could not recover benefits under the partnership agreements. The trial court then sub-mitted the damage issues to the jury, which found none. Accordingly, the trial court entered take-nothing judgments on each claim. Both parties appeal. We affirm that portion of the judgment which decrees that plaintiff take nothing against Mr. Sharp. We reverse that portion of the judgment which decrees that Mr. Sharp take nothing and render judgment that he recover $46,547.40 plus interest and costs from plaintiff.

The record shows, *inter alia*, that Peat, Marwick, Mitchell & Co. is an accounting partnership with offices within and outside the United States of America and its territorial possessions. Sharp was employed with the accounting partnership in 1964, became a partner in 1972 and withdrew in 1976. He worked only with the firm in the State of Texas and was a tax partner at the Amarillo office from 1972 until his withdrawal.

The parties executed two partnership agreements dated July 1, 1975. One agreement concerned the partnership activities within the United States and its territorial possessions and the other agreement dealt with activities outside this area. Both agreements contain provisions for voluntary withdrawal from the partnership, surrender of units of interest and allocation of profits upon surrender of the units of interest. Each agreement also contains a section which set forth certain covenants for withdrawing on retiring partners. This section provides, in part:

Section 9. *Covenants of Withdrawing or Retiring Partners/Principals*

\* \* \* \* \* \*

(b) *Continuation of the Practice of Public Accounting*

\* \* \* \* \* \*

(ii) *Those not vested under the Retirement Allowance Plan*

Except at the request of the Firm, a Partner or Principal not vested under the Retirement Allowance Plan shall not engage directly or indirectly in the practice of Public Accounting in any of its phases within the Territory of the Partnership

for a period of two (2) years after the date he ceases to be a Partner or Principal, except with the written permission of the Executive Committee and then only with the understanding that such Partner or Principal shall not solicit or perform services for any client of the Firm or any organizations with which the Firm was negotiating for the provision of its services on that date.

(c) *Additional Remedies of the Firm for Breach*

In addition to all other remedies open to the Firm, violation of this Section shall result in forfeiture of any rights under this Agreement that might otherwise appertain to such person violating this Section.

The undisputed evidence shows that Mr. Sharp fell within section 9(b)(ii) of the above agreement.

By a letter dated July 1, 1976, Mr. Sharp notified the accounting firm of his determination to withdraw from the partnership and surrender his units of interest in the firm effective January 1, 1977. After withdrawing from the partnership Sharp began practicing certified public accounting in Amarillo, Texas. Among Mr. Sharp's clientele were several parties and entities which were clients of the Amarillo office of Peat, Marwick, Mitchell & Co. when he withdrew from the firm.

Peat, Marwick, Mitchell & Co. proceeded to trial on its First Amended Original Petition. In this pleading, the partnership alleged violation of the covenant not to compete by soliciting and performing professional services for clients of the firm. The partnership specifically sought only actual and exemplary damages for the alleged breaches of the covenant not to compete.

Mr. Sharp filed a sworn denial and affirmatively pleaded that the forfeiture provision of section 9(b)(ii) is in restraint of trade, against public policy and unenforceable. He further asserted that the covenant not to compete contained in section 9(b)(ii) "is unreasonable, both as to territory and the period of time involved."

Mr. Sharp also filed a counterclaim for certain accrued benefits "under a profit sharing participation plan for the partners of Peat, Marwick, Mitchell & Co." The accounting firm did not file an answer in response to Mr. Sharp's claim for accrued benefits under the partnership agreements.

The trial court first proceeded to hear the question concerning the legal effect of the covenant not to compete. The parties made stipulations which were filed in the cause. Peat, Marwick, Mitchell & Co. placed the two partnership agreements and Mr. Sharp's letter of withdrawal into evidence and then presented evidence from Mr. Sharp. At the close of this evidence, the trial court determined that the covenant not to compete was not reasonably limited as to geographic space and "that the law does require a reformation."

After this determination by the trial court, both parties moved for judgment. The court overruled Sharp's motion for judgment for accrued benefits under the partnership agreement in the stipulated amount of $46,547.40. The trial court also determined that Mr. Sharp was liable for damages in violation of the covenant not to compete. Then, the trial court proceeded to hear before a jury the question of the amount of damages, if any, for breach of the covenant. The jury found no damages. Thus, the trial court entered a take-nothing judgment as to each of the respective claims of the parties.

In his first point of error, Sharp says that, as a matter of law, Peat, Marwick, Mitchell & Co. cannot recover damages for violations of the covenant not to compete because the covenant is unenforceable as written and that any recovery of damages for violation of the covenant prior to reformation would effectuate a retroactive application of the unenforceable covenant. Peat, Marwick, Mitchell & Co. by cross points complains that the jury's verdict of no damages is against the great weight and preponderance of the evidence and that the trial court erroneously submitted the wrong measure of damages to the jury.

In support of his position, Sharp relies on *Weatherford Oil Tool Company v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 953 (1960). In *Weatherford* the Court stated:

We hold that an action for damages resulting from competition occurring before a reasonable territory and period have been prescribed by a court of competent jurisdiction must stand or fall on the contract as written. *If the agreement is not enforceable in accordance with its terms because either the time or the area stipulated therein is unreasonable, the employer* may obtain injunctive relief but *will not be awarded a money recovery for anything the employee may have done prior to a judicial declaration of the rights and obligations arising from the contract* (emphasis added).

In the case before us, the covenant not to compete is unenforceable as written in the partnership agreements. The covenant does not specify or stipulate a reasonable geographical area. In this connection, we observe that the trial court, in its judgment, expressed an opinion that the covenant should be reformed; however, the judgment does not order and decree a reformation of the covenant. We also note that Peat, Marwick, Mitchell & Co. did not plead for a reformation of the covenant not to compete. Under the circumstances, we must conclude, as a matter of law, that the trial court did not err by entering a take-nothing judgment against Peat, Marwick, Mitchell & Co. on its claim for damages for alleged violations of the unenforceable covenant not to compete. Accordingly, Mr. Sharp's first point of error is sustained, which is dispositive of the cross points by Peat, Marwick, Mitchell & Co.

Mr. Sharp also contends that the trial court erred in rendering judgment that he take nothing on his counterclaim for accrued benefits under the partnership agreement. In this connection, he contends that "a violation of an unreasonable covenant not to compete cannot result in a forfeiture of accrued benefits otherwise recoverable" under the agreements. Peat, Marwick, Mitchell & Co. counters that covenants not to compete are valid conditions precedent to Sharp's action for benefits under the agreements.

Peat, Marwick, Mitchell & Co. cites *Dollgener v. Robertson Fleet Services, Inc.*, 527 S.W.2d 277 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.) in support of its position. In *Dollgener*, a retired employee brought an action against his former employer and the trustees of a profit-sharing pension plan to recover retirement benefits under the plan. The plan was funded entirely by the employer. A clause in the plan provided for the forfeiture of all interest in the plan if the former employee became a competitor of the employer. The clause was unlimited as to time or area. The court held that the forfeiture provision in the pension trust plan imposed a valid condition on the employee to receive pension benefits and that the provision did not "constitute an unreasonable restraint of trade and does not violate the public policy of this State." *Dollgener v. Robertson Fleet Services, Inc., supra*, at 280.

The decision in *Dollgener* is not controlling in the case before us. Mr. Sharp, as a withdrawing partner, seeks accrued benefits under the partnership agreements which are an employment agreement. The negative covenants not to compete, as written in the agreements, are invalid restraints of trade and against public policy. *Weatherford Oil Tool Company v. Campbell, supra*, at 951; *Wissam v. Boucher*, 150 Tex. 326, 240 S.W.2d 278, 280 (1951). The invalid covenants remain in restraint of trade and against public policy until and unless they are judicially reformed. *Weatherford Oil Tool Company v. Campbell, supra*, at 952. As we pointed out above, the covenants have not been judicially reformed. Under the circumstances of this case, we are persuaded that the negative covenants not to compete do not preclude Mr. Sharp from recovering any accrued benefits under the partnership agreements.

Mr. Sharp also maintains that the trial court erred in rendering a take-nothing judgment on his counter claim for the accrued benefits under the partnership agree-

ment because the parties stipulated "that but for the alleged violation of the unreasonable covenants not to compete, Joe E. Sharp was entitled to recover the accrued benefits he claimed." In the proceedings Mr. Sharp moved for judgment on this action "to recover benefits which *by stipulation* became available to Joe Sharp as a partner in the firm Peat, Marwick, Mitchell & Co., and to which he would have been entitled but for the alleged violation of the covenant unenforceable as written (emphasis added)." The stipulation in question is as follows:

4. That under the Articles of Partnership in question, if this controversy had not come about, the Defendant would have been entitled to the sum of $46,-547.40 in payments from his various accounts, interest, and profit participation from July 1, 1977 until December 31, 1977.

Peat, Marwick, Mitchell & Co. claims that Mr. Sharp misconstrued the stipulation. The accounting partnership said Mr. Sharp's entitlement to the sum of $46,547.40 in payment from his various accounts, interest and profit participation under the articles of partnership in question is conditioned and qualified by the phrase "if this controversy had not come about," that the controversy did in fact "come about," and therefore he cannot recover by virtue of the stipulation.

 In general, a stipulation is an agreement, admission or concession made in a judicial proceeding by the parties thereto or their respective attorneys relating to matters incident to the proceedings. Ordinarily, stipulations are made to avoid delay, transfer and expense of the litigation. The stipulation should reasonably be construed to effectuate the intent of the parties. To ascertain the true intent of the parties, the court must look to the subject matter of the controversy, the surrounding circumstances and the whole record, including the pleadings, the allegations made therein and the issues involved in the controversy. *See* 83 C.J.S. *Stipulations* § 11b (1953); 53 Tex. Jur.2d *Stipulations* § 1 (1964).

Peat, Marwick, Mitchell & Co. went to trial on its first amended original petition. In this pleading, the accounting partnership claims that the covenant not to compete is valid, that Mr. Sharp violated the covenant and that he was liable in damages for breach of the covenant. Mr. Sharp denied the allegations and affirmatively plead the invalidity of the covenant not to compete. He also filed a counter claim for accrued benefits under the partnership as a retiring or withdrawing partner. Peat, Marwick, Mitchell & Co. did not respond to this pleading by filing a general denial or asserting any affirmative defenses to the action.

When the controversy came to trial the court stated, "It is my understanding that the parties are going to waive a jury on the issue of liability, feeling that that is strictly a question of law; is that correct?" The parties, through their respective attorneys, responded as follows:

MR. BESSELMAN: That's my understanding.

MR. STURDIVANT: That is correct, Your Honor.

The trial court then proceeded to hear the parties on the question of liability. At this hearing the central issues were the validity of the covenant not to compete and its legal effect on the parties' claim against each other. After hearing testimony, the court ruled that the negative covenant not to compete was not limited to reasonable space and the law required a reformation. After this ruling by the trial court, both parties moved for judgment.

Mr. Sharp moved for judgment on the damages sought by Peat, Marwick, Mitchell & Co. on the grounds "that the damages sought are retroactive to contract, and damages are not recoverable on the contract as written . . ." Mr. Sharp also moved for judgment on his action for damages as follows:

And, (b) on the action of the Cross-Plaintiff, Joe Sharp, to recover benefits which by stipulation become available to Joe Sharp as a partner in the firm of Peat, Marwick, Mitchell & Co., and to which he would have been entitled but

for the alleged violation of the covenant unenforceable as written. The amount that he seeks having been established by a stipulation presently filed with the Court at this time and of record.

The trial court denied Mr. Sharp's motion.

Peat, Marwick, Mitchell & Co. moved for an instructed verdict. The motion states as follows:

## I.

Plaintiff urges that reasonable minds could not differ as to whether or not the Defendant in this case has violated the covenant not to compete contained in the Articles of Partnership which are in evidence. That is, Defendant has, subsequent to July 1, 1976, performed services for clients of the Plaintiff for which he has been paid the sums of money now in evidence. Further, by virtue of the violation of the pertinent section of the Articles of Partnership in question, Defendant has forfeited any rights under such Articles of Partnership.

## II.

Therefore, Plaintiff moves that Defendant's liability be established as a matter of law for damages accruing to Plaintiff by virtue of Defendant's performance of services for Plaintiff's clients, of its Amarillo office, for a period of two years subsequent to July 1, 1976 and that; further, Plaintiff has no liability to Defendant under his counterclaim.

The statement of facts further reveals the position of the parties. Mr. Besselman representing Peat, Marwick, Mitchell and Co. and Mr. Sturdivant representing Mr. Sharp each stated in the record:

MR. BESSELMAN: As I understand our positions now, assuming the Court grants my Motion for Instructed Verdict, is that the Plaintiff is entitled to, as a matter of law, is entitled to a money judgment of some amount to be determined by the jury from the Defendant, and that because of the violation of the covenant not to compete and by virtue of

its—the other contractural aspects of the Articles of Partnership, the Defendant is not entitled to recover on his counter claim. And the amount of money is stipulated.

MR. STURDIVANT: As to the second part.

MR. BESSELMAN: As to the second part.

MR. STURDIVANT: Leaving only now for issue the question of the amount of damages recoverable under the Plaintiff's Original Complaint.

MR. BESSELMAN: Correct.

The trial court responded "All right. The motion will be granted in that regard." Then, the court proceeded to hear the question of damages with a jury.

■ The record clearly establishes that Peat, Marwick, Mitchell & Co. tried the case on the theory that the covenant in question was valid as written, that Mr. Sharp forfeited all of his benefits under the agreement by violating the covenant as written. We reiterate that the accounting partnership filed no general denial or affirmative defenses in response to Mr. Sharp's counter claim and offered in the trial court no other defenses to his action. Under the circumstances, we are persuaded that the parties intended the stipulation in question to relate to matters material to the proceedings rather than merely stating an abstract proposition. We therefore conclude that the parties intended by the stipulation that Mr. Sharp was entitled to the sum of $46,547.40, if the covenant and forfeiture provisions in question were unenforceable as written in the agreement.

In summary, we sustain Mr. Sharp's points of error and overrule Peat, Marwick, Mitchell & Co.'s cross points of error. Accordingly, that portion of the judgment decreeing that Peat, Marwick, Mitchell & Co. take nothing on its cause of action against Mr. Sharp is affirmed and that portion of the judgment decreeing Mr. Sharp take nothing from Peat, Marwick, Mitchell & Co. is reversed and judgment is rendered that Joe E. Sharp recover from Peat, Marwick, Mitchell & Co. the sum of $46,547.40, plus

interest at the rate of nine percent per annum from June 9, 1978, until paid. Costs are adjudged against Peat, Marwick, Mitchell & Co.

COUNTISS, J., not participating.