Kelley RIEVES, Appellant

v.

BUC-EE'S LTD., Appellee

NO. 14-15-01061-CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed October 12, 2017

Bruce Johnson, Houston, TX, for Appellant.

Jeffrey S. Wolff, Joy M. Soloway, Seth Isqur, Houston, TX, for Appellee.

Panel consists of Justices Christopher, Busby, and Donovan.

## OPINION

J. Brett Busby, Justice

This summary judgment appeal presents the question whether provisions in an employment agreement that require an employee to repay substantial parts of her compensation upon termination of employment are unlawful restraints of trade. Because the provisions lack reasonable limits and impose a substantial penalty on the exercise of an at-will employee's right to quit her job, we hold that they are unenforceable. We therefore reverse the trial court's judgment and (1) render judgment that appellee Buc-ee's Ltd. take nothing on its claims against appellant Kelley Rieves; (2) render judgment declaring the "Additional Compensation" and "Retention Pay" provisions in Rieves's employment contracts to be unenforceable restraints of trade; and (3) remand the question of Rieves's entitlement to attorneys' fees to the trial court for further proceedings.

## BACKGROUND

Buc-ee's operates a well-known chain of convenience stores in Texas. Rieves, a graduate of Texas Tech University with a degree in restaurant and hotel management, was working for TGI Fridays restaurants when she began to explore a potential new job as a Buc-ee's assistant manager. During this process, Rieves met with Don Wasek, Buc-ee's president. Wasek asked Rieves what payment she would need to take a job with Buc-ee's. Rieves responded that she would need to be paid at least the salary she was earning at TGI Fridays, which was approximately $55,000 per year. Wasek agreed to that amount and told Rieves it would be split between an hourly pay rate and a flat monthly amount. Wasek then told Rieves that she could pick, within specified limitations, the percentage split between the two. The split requirement was not negotiable. Rieves picked a 70-30 split. Rieves accepted an assistant manager position at one of Buc-ee's convenience stores.

Rieves signed an employment agreement with an effective date of August 25, 2009 (the 2009 Agreement). The 2009 Agreement provided that Rieves would be an at-will employee and that she would be paid an hourly wage of $14 plus a "fixed monthly bonus of $1,528.67." The monthly bonus provision is found in Article 3, entitled "Additional Compensation." This article states, in pertinent part:

3.02 For the additional compensation to be paid Employee under Paragraph 3.01, Employee shall be required to work for Employer a minimum of 60 months from the Effective date of this Agreement and shall also provide Employer with a minimum of 6 months written separation notice. In the event Employee does not meet the above requirements, regardless of the reason for termination or regardless of the reason Employee did not provide the required notification, Employee shall be required to repay all of the Additional Compensation to Employer.... In other words, in the event Employee's employment with Employer ... terminates for any reason, with or without cause, and the above requirements are not meet [sic] by Employee, Employee will be required to repay all of the additional compensation received.

About a year later, Wasek met with Rieves again. This meeting produced a new employment agreement (the 2010 Agreement). Under the terms of the 2010 Agreement, Rieves remained an at-will employee and would receive a weekly salary of $862.75. Buc-ee's reserved the right to modify this salary. Article 3 of the 2010 Agreement is entitled "Retention Pay." Under that article, Rieves would be "advanced a monthly retention payment of 1.2652% of Buc-ee's # 32 net profit paid monthly and a one time payment of $1000.00." Buc-ee's reserved the right to modify this pay as well. To earn the Retention Pay, Rieves was "required to work for [Buc-ee's] a minimum of 48 months from the Effective date of this Agreement and shall also provide [Buc-ee's] with a minimum 6 months written Separation Notice to be given only after [Rieves] fulfills [the] required minimum number of months worked." Like the 2009 Agreement, the 2010 Agreement required Rieves to repay all Retention Pay if she did not work a minimum of 48 months and give the minimum six months' written notice of separation, regardless of the reason both requirements were not met. If not repaid within 30 days of termination, the retention pay and additional compensation would accrue interest at 10 percent per year, compounded annually. Article 3 also provided that Rieves "completely understands that there

is a clear and mutual understanding that Retention Pay is for all hours worked."

Among other terms, the 2010 Agreement contains the following pertinent sections:

6.06 In the event [Rieves] has prior Employment Contract(s) with [Buc-ee's] which required [Rieves] to repay Additional Compensation, the obligation to repay the Additional Compensation shall continue to exist unless [Rieves] complies with all the terms of this Agreement. Except as provided in the previous sentence, this Agreement supersedes all other agreements, either oral or in writing, between the parties to this Agreement with the exception of any non-solicitation, non-competition, non-compete, non-disclosure agreements that may be in place.

. . . .

6.08 In the event it becomes necessary for [Buc-ee's] to sue to enforce the provisions of this Agreement, and/or in the event that [Buc-ee's] is involved in litigation wherein [Buc-eye's] defends itself in whole or in part, based upon this Agreement, [Buc-ee's] shall be entitled to collect from [Rieves] all attorney's fees and other costs and expenses of litigation incurred by [Buc-ee's].

. . . .

6.09 The following definitions shall apply to this Agreement. In the event it is determined that a definition is ambiguous, the meaning given to it by [Buc-ee's] shall control.

1. **Net, Food Service Net, Car Wash Net, Store Net, Company Net, Net Income; Net Profit, Bottom Line; Net Profit (Loss)** (collectively referred to as "Net") are collectively defined as the amount of sales less costs of sales less expenses, at store(s) or the entire Company. [Buc-ee's], at its sole discretion, shall determine, at any time (including, without limitation, monthly, quarterly and annually), sales, costs of goods and all expenses. [Buc-ee's] determination of Net shall be conclusive, final and binding upon Employee. Employee willingly agrees to accept [Buc-ee's] determination of Net. [Buc-ee's] reserves the right to modify Net, prospectively and retrospectively. In the event, [Buc-ee's] modifies Net retrospectively; [Buc-ee's] shall have the right to adjust any compensation, bonuses or pay based upon said modification.

Rieves received Additional Compensation under the 2009 Agreement and later Retention Pay under the 2010 Agreement, and she paid federal income taxes on these amounts. Rieves resigned from her employment with Buc-ee's effective July 12, 2012—about three years after she began work. A year later, Buc-ee's sent Rieves a demand for payment of $66,720.29, plus interest and attorneys' fees. Buc-ee's asserted this was the amount of Additional Compensation and Retention Pay Rieves had been paid during her employment with Buc-ee's.

Rieves responded by filing this lawsuit seeking a declaration that these provisions of the Agreements function as unreasonable restraints of trade and are therefore unenforceable. Buc-ee's filed an answer and counterclaim seeking to recover the $66,720.29, plus interest and attorneys' fees. In response to Buc-ee's counterclaim, Rieves asserted, among other defenses, that the Additional Compensation and Retention Pay provisions were unenforceable restraints of trade. Rieves later added causes of action for fraud, fraudulent inducement, negligent misrepresentation, breach of contract, quantum meruit, and unjust enrichment.

Buc-ee's filed a motion for partial summary judgment on Rieves's declaratory judgment action as well as on her affirmative defenses, asserting that the Additional Compensation and Retention Pay provisions in her employment agreements were unenforceable. Buc-ee's argued that the provisions (1) are forfeiture provisions, not unenforceable covenants not to compete; and (2) even if they are covenants not to compete, they are enforceable under Texas law. The trial court granted the motion.

Buc-ee's then filed a second motion for summary judgment on (1) its counterclaim for breach of contract; (2) Rieves's remaining affirmative defenses; and (3) all of Rieves's claims seeking monetary damages. Rieves filed a motion for summary judgment on Buc-ee's counterclaim for breach of contract and on her request for a declaratory judgment. The trial court granted Buc-ee's second motion for summary judgment, denied Rieves's motion, and then signed a final judgment awarding Buc-ee's $48,687.46 in damages plus prejudgment and post-judgment interest and attorneys' fees.[1] This appeal followed.

### ANALYSIS

Rieves raises numerous issues challenging the trial court's orders granting Buc-ee's motions for summary judgment and denying her own. We consolidate these challenges into three: (1) the 2010 Agreement is unenforceable due to a lack of consideration; (2) the 2010 Agreement is unconscionable; and (3) the repayment provisions found in both agreements are unenforceable restraints of trade.[2] We need address only Rieves's third issue challenging the Additional Compensation and Retention Pay provisions as unenforceable restraints of trade because it provides her with all the relief she seeks on appeal regarding the agreements. Tex. R. App. P. 47.1. Finally, Rieves challenges the trial court's award of attorneys' fees to Buc-ee's.[3]

## I. The Additional Compensation and Retention Pay provisions are unenforceable restraints of trade.

### A. Standard of review

█ We review a trial court's order granting a traditional summary judgment de novo. *Mid–Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). When a plaintiff moves for summary judgment on its cause of action, it must conclusively prove all essential elements of its claim as a matter of law. *Cullins v. Foster*, 171

1. The difference between the amount Buc-ee's initially sued Rieves to collect ($66,720.29) and the amount the trial court awarded Buc-ee's in the final judgment is explained by Buc-ee's waiving its claim to the amount of federal income taxes that were withheld from Rieves's Additional Compensation and Retention Pay payments.

2. Buc-ee's argues that Rieves waived any appellate challenge to the enforceability of the 2009 Agreement's Additional Compensation provision because she mentioned only the 2010 Agreement by name in her opening brief. We conclude that no waiver occurred because section 6.06 of the 2010 Agreement incorporated the Additional Compensation provision of the 2009 Agreement, and Rieves's arguments apply equally to both agreements' repayment provisions. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008); *Zagorski v. Zagorski*, 116 S.W.3d 309, 315 n.2 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (rejecting contention that appellant waived her appellate complaint due to the failure of her issues to expressly challenge specific findings or conclusions of law because her argument addressed the findings and conclusions).

3. Rieves does not, however, complain on appeal about the trial court's denial of her motion for summary judgment on her own request for attorneys' fees.

S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). When a defendant moves for summary judgment, it must disprove at least one essential element of the plaintiff's cause of action in order to prevail. *Doggett v. Robinson*, 345 S.W.3d 94, 98 (Tex. App.—Houston [14th Dist.] 2011, no pet.). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, the appellate court reviews both motions and determines all questions presented. *Id.* The reviewing court should then render the judgment that the trial court should have rendered, or reverse and remand if neither party has met its summary judgment burden. *Id.*

▮▮▮ Rieves contends the repayment provisions should be considered covenants not to compete. The enforceability of a covenant not to compete is a question of law. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex. 1990); *Curtis v. Ziff Energy Group, Ltd.*, 12 S.W.3d 114, 118 (Tex. App.—Houston [14th Dist.] 1999, no pet.). We review a trial court's resolution of questions of law de novo. *See Hicks v. Hicks*, 348 S.W.3d 281, 284 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Under de novo review, the reviewing court exercises its own judgment and re-determines each legal issue. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

**B. The provisions are unenforceable because they lack reasonable limits and impose a substantial penalty on Rieves for exercising her right as an at-will employee to quit her job.**

▮▮▮ It is undisputed that Rieves was an at-will employee of Buc-ee's. At-will employment is an important and long-standing doctrine in Texas. *Sawyer v. E.I.*

*Du Pont de Nemours & Co.*, 430 S.W.3d 396, 402 (Tex. 2014). Under that doctrine, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Id.* at 399 (citation and internal quotation marks omitted). Because "a person's right to use his own labor in any lawful employment is ... one of the first and highest of civil rights," Texas has zealously guarded against any erosion of the at-will employment doctrine. *Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 776 (Tex. 2011) (citation and internal quotation marks omitted); *see Sawyer*, 430 S.W.3d at 399. Although an employer and employee may modify their at-will relationship by agreement, Texas courts have "insisted that the parties be definite in expressing their intent." *Sawyer*, 430 S.W.3d at 403.

In the Free Enterprise and Antitrust Act, the Legislature declared that " '[e]very contract, combination, or conspiracy in restraint of trade or commerce is unlawful.' " *Marsh USA, Inc.*, 354 S.W.3d at 770 (quoting Tex. Bus. & Com. Code Ann. § 15.05(a) (West 2011)). The Supreme Court of Texas has concluded that covenants limiting employees' professional mobility are unlawful restraints of trade under this statute unless they fall within the exception created by the Covenants Not to Compete Act. *Id.* at 768, 770; *see also id.* at 782 (Willett, J., concurring in judgment). As the court explained, "[u]nreasonable limitations on employees' abilities to change employers ... could hinder legitimate competition between businesses and the mobility of skilled employees." *Id.* at 769. The Covenants Not to Compete Act provides that a covenant is enforceable only if (among other things) "it contains limitations as to time, geographic area, and scope of activity to be restrained that are reasonable and do not impose a greater

restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code Ann. § 15.50(a); *see also DeSantis*, 793 S.W.2d at 681 (explaining similar standards of reasonableness that had to be met to enforce covenants at common law).[4]

Under supreme court precedent, these standards of reasonableness apply not only to provisions that expressly limit a former employee's professional mobility, but also to damages provisions that impose a severe economic penalty on a departing employee. *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991) (holding that "provisions clearly intended to restrict the right to render personal services are in restraint of trade and must be analyzed for the same standards of reasonableness as covenants not to compete to be enforceable," and applying standards to conclude that requiring employee to pay liquidated damages for furnishing services to clients of former employer was unreasonable); *Frankiewicz v. Nat'l Comp Assocs.*, 633 S.W.2d 505, 507 (Tex. 1982) (holding agreement that departing employee would forfeit vested renewal commissions in event of competition was unenforceable because it lacked reasonable limits on area and scope of activity). "The practical and economic reality" of such damages provisions is that they inhibit employee mobility in "virtually the same [manner] as a covenant not to compete." *Haass*, 818 S.W.2d at 385–86. Because the Additional Compensation and Retention Pay provisions impose a severe economic penalty on Rieves if she exercises her right as an at-will employee to quit her employment with Buc-ee's, we conclude they are unlawful unless they meet the reasonableness standards applicable to covenants not to compete. *See id.* at 388.[5]

As noted above, an enforceable covenant must contain limitations as to time, geographic area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than necessary to protect the employer's business interest. Tex. Bus. & Com. Code Ann. § 15.50(a) (West 2011); *Marsh USA, Inc.*, 354 S.W.3d at 777. The Additional Compensation and Retention Pay provisions impose no limits on Rieves's repayment obligation based on whether her new employment involves certain competitive activities or is located within certain areas.[6] Moreover, they require Rieves to repay compensation even if (1) Buc-ee's chooses to terminate her through no fault of her own on the last day of the period she is "required to work," or (2) she quits to take a non-competing job—or no job at all. These provisions go far beyond protecting any legitimate competitive interest of Buc-ee's, impose significant hardship on Rieves by clawing back substantial compensation already paid to her and on which she had paid taxes, and

4. The Covenants Not to Compete Act returned Texas law regarding the enforceability of such covenants to the common-law requirements that existed before the supreme court adopted a narrow "common calling" test. *See Marsh USA, Inc.*, 354 S.W.3d at 772–73.

5. Even if we were to take the formalist view that these provisions are not subject to the Covenants Not to Compete Act because they do not expressly prohibit competition, our holding that the provisions are unlawful would not change. As explained above, the Act provides an exception to the general rule that employee mobility limits are unlawful restraints of trade, so the Act's inapplicability would simply result in the provisions being held unlawful under the general rule. In addition, as discussed below, the provisions likewise fail the common-law reasonableness standards (similar to those in the Act) that the supreme court applied to the damages provisions in *Haass* and *Frankiewicz*.

6. It is undisputed that Rieves left her job at Buc-ee's for a job in an unrelated business that did not compete with Buc-ee's convenience stores in any manner.

injure the public by limiting choice and mobility of skilled employees. *See Haass*, 818 S.W.2d at 386–87 (concluding damages provision failed common-law reasonableness requirements that restraint not be greater than necessary to protect employer's legitimate interests and not be outweighed by hardship to employee or any likely injury to public).

For these reasons, we hold that the Additional Compensation and Retention Pay provisions are unreasonable and therefore unenforceable. *See* Tex. Bus. & Com. Code Ann. § 15.50(a); *Haass*, 818 S.W.2d at 388; *Frankiewicz*, 633 S.W.2d at 507–08. Because they are unenforceable, the provisions cannot support Buc-ee's counterclaim against Rieves seeking the return of the Additional Compensation and Retention Pay she received during her employment.

Buc-ee's makes several arguments against this result, but none are persuasive. Buc-ee's initially argues that the Additional Compensation and Retention Pay provisions are enforceable forfeiture provisions, not restraints of trade. Buc-ee's cites *ExxonMobil Corp. v. Drennen*, a choice-of-law case, in support of this argument. 452 S.W.3d 319, 321 (Tex. 2014). In *Drennen*, the Supreme Court of Texas examined an ExxonMobil executive incentive program that allowed ExxonMobil to terminate outstanding awards of restricted stock options if the employee engaged in detrimental activity. *Id.* at 322. One type of detrimental activity under the incentive program was accepting employment with an ExxonMobil competitor. *Id.* The program contained a New York choice-of-law clause. *Id.* at 321. In examining whether application of New York law would violate a fundamental poli-

cy of Texas, the court stated "[w]hatever it may mean to be a covenant not to compete under Texas law, forfeiture clauses in non-contributory profit-sharing plans, like the detrimental activity provisions in ExxonMobil's Incentive Programs, clearly are not covenants not to compete." *Id.* at 329.

We conclude *Drennen* does not affect the outcome here for two reasons. First, *Drennen* involved a different type of compensation plan than the one at issue here. The dispute in *Drennen* grew out of ExxonMobil's cancellation of future payments of unvested stock options that had been awarded but not delivered to Drennen, an ExxonMobil vice president, under a non-contributory profit-sharing plan. ExxonMobil cancelled the future payments after Drennen retired and then accepted employment at an ExxonMobil competitor. *Id. Drennen* did not involve ExxonMobil seeking the return of Drennen's salary or any stock options that had already vested. In contrast, Buc-ee's seeks the return of money that had already been paid to Rieves "for all hours worked" as a convenience store assistant manager and on which she had already paid federal income taxes.[7]

Second, the supreme court in *Drennen* examined the differences between non-competes and forfeiture provisions. As the court explained,

> [n]on-competes protect the investments an employer has made in an employee, ensuring that the costs incurred to develop human capital are protected against competitors who, having not made such expenditures, might appropriate the employer's investment. Forfeiture provisions conditioned on loyalty, however, do not restrict or prohibit the employees' future employment opportu-

---

7. Additionally, *Drennen* is not on point because the supreme court expressly declined to address whether provisions in *non-contributory* employee incentive programs like Exxon-Mobil's, much less compensation plans like Buc-ee's method of paying Rieves's salary, are unreasonable restraints of trade under Texas law. *Id.* at 329.

nities. Instead, they reward employees for continued employment and loyalty. As we recognized in *Marsh*, employee stock-ownership plans have a purpose that is unrelated to restraining competition—linking the interest of key employees with the employer's long-term success. Under a non-compete, the former employer can bring a breach of contract suit to enforce the clause. But under a forfeiture provision, the former employer does not need to take legal action because the profit-sharing plan belongs to the employer.

*Id.* at 327–28 (internal citations omitted). Here, the Additional Compensation and Retention Pay provisions do not have the hallmarks of forfeiture provisions as described by the supreme court. These provisions do not reward Rieves for her loyalty because (1) they require Rieves to disgorge a substantial part of the compensation she was paid even if it is Buc-ee's (not Rieves) who terminates the employment relationship; and (2) the longer Rieves works for Buc-ee's, the larger the penalty becomes if she exercises her right as an at-will employee to quit her job. Furthermore, the additional compensation and retention pay had not been retained by Buc-ee's; the funds had been paid to Rieves, and Buc-ee's had to file this suit for breach of contract to try to get them back.

Buc-ee's reliance on *Dollgener v. Robertson Fleet Services, Inc.*, 527 S.W.2d 277 (Tex. App.—Waco 1975, writ ref'd n.r.e.), is also misplaced. *Dollgener* involved a profit-sharing pension plan wholly funded by Dollgener's former employer. *Id.* at 278. Benefits under this non-contributory plan were payable when an employee retired, died, or became disabled. *Id.* The benefits were also payable when an employee terminated his employment unless he went to work for a competitor. *Id.* Dollgener quit and started a competing business. *Id.* When his former employer

refused to pay him any benefits under the pension plan, he filed suit alleging the forfeiture provision was an unenforceable covenant not to compete. *Id.* The court of appeals held that the provision was a valid forfeiture provision. *Id.* at 280. Because *Dollgener* involved forfeiture of future payments under a non-contributory pension plan and did not address provisions like those requiring Rieves to disgorge compensation previously paid to her, we conclude that it, like *Drennen*, is not on point.

Finally, Buc-ee's gains no support from its citations to *Dresser–Rand Co. v. Bolick*, No. 14-12-00192-CV, 2013 WL 3770950 (Tex. App.—Houston [14th Dist.] July 18, 2013, pet. filed) (mem. op.); *Fletcher v. Energy Res. Tec. GOM, Inc.*, No. 01-11-00553-CV, 2012 WL 3628896 (Tex. App.—Houston [1st Dist.] Aug. 23, 2012, no pet.) (mem. op.); and *White v. Aguirre, Inc.*, No. 05-00-00503-CV, 2002 WL 987930 (Tex. App.—Dallas May 15, 2002, no pet.) (mem. op., not designated for publication). Unlike the present case, none of those cases involved an effort by an employer to claw back compensation previously paid to an employee when that employee exercised her at-will employment right to change jobs.

Having determined that the Additional Compensation and Retention Pay provisions are unenforceable restraints of trade, we sustain Rieves's third consolidated issue. We hold that the trial court erred when it: (1) granted Buc-ee's partial motion for summary judgment; (2) granted Buc-ee's second motion for summary judgment; and (3) denied Rieves's motion for summary judgment on her request for a declaration that the Additional Compensation and Retention Pay provisions are unenforceable restraints of trade and on Buc-ee's counterclaim for breach of contract.

## II. The attorneys' fees provision in the 2010 Agreement is preempted by the Covenants Not to Compete Act.

 Finally, Rieves challenges the trial court's award of attorneys' fees to Buc-ee's. Section 6.08 of the 2010 Agreement entitles Buc-ee's to collect attorneys' fees from Rieves if Buc-ee's sues to enforce the Agreement or defends itself in whole or part based on the Agreement; it does not entitle Rieves to fees or require that Buc-ee's prevail in order to recover its fees.[8] Buc-ee's also requested fees under the Declaratory Judgments Act and Chapter 38 of the Civil Practice and Remedies Code. Among other arguments, Rieves asserts that these fee remedies are preempted by the Covenants Not to Compete Act. *See* Tex. Bus. & Com. Code Ann. §§ 15.51(c), 15.52 (West 2011). We agree.

Section 15.52 of the Covenants Not to Compete Act provides that the criteria for enforceability of a covenant in section 15.50 and the procedures and remedies for enforcement in section 15.51 "are exclusive and preempt" any other enforceability criteria or "procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise." *Id.* § 15.52; *see Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 644–45 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding Covenants Not to Compete Act preempted contractual provision allowing employer to recover attorney's fees in suit to enforce non-disclosure agreement construed as non-compete). We have already held that the Additional Compensation and Retention Pay provisions are unenforceable under the Act's criteria. *See Marsh USA, Inc.*, 354 S.W.3d at 768; *Haass*, 818 S.W.2d at 388. Therefore, section 15.52 preempts Buc-ee's request for fees based on other statutes or the 2010 Agreement.[9] We sustain Rieves's issue challenging the award of attorneys' fees to Buc-ee's.

### CONCLUSION

Having sustained Rieves's issues challenging the Additional Compensation and Retention Pay provisions as unenforceable restraints of trade and challenging the award of attorneys' fees to Buc-ee's, we reverse the trial court's final judgment and render judgment (1) that Buc-ee's take nothing on its claims against Rieves; (2) that Buc-ee's take nothing on its request for attorneys' fees; and (3) declaring that the Additional Compensation and Retention Pay provisions in Rieves's employment agreements are unenforceable restraints of trade. We remand the question of Rieves's entitlement to attorneys' fees to the trial court for further proceedings.

---

8. The parties dispute whether the attorneys' fee provision of the 2009 Agreement survived the 2010 Agreement. We need not decide this issue because even if the 2009 provision survived, it would likewise be preempted.

9. *See Glattly*, 332 S.W.3d at 644–45; *see also Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 827 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (affirming trial court's denial of employer's request for attorneys' fees because Covenants Not to Compete Act does not authorize award of attorneys' fees to employers); *Franlink v. GJMS Unlimited, Inc.*, 401 S.W.3d 705, 712 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (affirming trial court's denial of employer's request for attorneys' fees because Covenants Not to Compete Act preempts Civil Practices & Remedies Code Chapter 38); *Perez v. Texas Disposal Sys., Inc.*, 103 S.W.3d 591, 594 (Tex. App.—San Antonio 2003, pet. denied) (holding Covenants Not to Compete Act controls award of attorney's fees and preempts award of fees under any other law).